No. 24,205.

THE STATE OF KANSAS, *Appellee*, v. F. M. PERKINS, *Appellant*.

SYLLABUS BY THE COURT.

1. EMBEZZLEMENT—*Money Collected by Agent on Principal's Mortgage.* A record mortgagee who has sold and assigned a real-estate note and mortgage to a purchaser is liable to prosecution and punishment as an embezzler if he receives payment from the mortgagor and discharges the mortgage of record and converts the money so received to his own use without the consent of the assignee.

2. SAME—*Agency—Estopped to Deny Agency.* One who assumes and exercises the function of a collection agent for another cannot be heard to deny his agency, and he may be punished as an embezzler if he converts the money so received to his own use without the consent of its owner—following *The State v. Spaulding,* 24 Kan. (Dass. Ed.) syl. ¶ 4.

3. SAME—*Evidence—Question of Fact for Jury.* Under the evidence adduced, the question whether defendant had embezzled or merely borrowed the money of the prosecuting witness was for the jury to decide.

4. SAME—*No Defense to Charge of Embezzlement.* The fact that the mortgagor paid the money to defendant as record mortgagee did not under the circumstances relieve the defendant of the consequences of his wrongful conversion of it.

5. SAME—*Embezzlement by a Partnership—Embezzlement by Each Partner Thereof.* A member of a partnership who wrongfully converts the money of his principal to the uses of the partnership converts it to his own use within the meaning of section 134 of the crimes act.

6. SAME—*Evidence of Other Similar Crimes.* In a prosecution for embezzlement, evidence of other similar crimes is competent to prove intent.

7. SAME—*Rulings on Evidence.* Certain testimony of defendant which was stricken out examined, and *held,* not prejudicial, and *held,* also, that the testimony was properly subject to the particular objection lodged against it.

8. SAME—*Instructions.* Instructions examined and no error discerned therein.

Appeal from Douglas district court; HUGH MEANS, judge. Opinion filed December 9, 1922. Affirmed.

*Oscar E. Learned* and *Thomas Harley,* both of Lawrence, for the appellant.

*Richard J. Hopkins,* attorney-general, and *A. B. Mitchell,* county attorney, for the appellee.

The opinion of the court was delivered by

DAWSON, J.:   The defendant was convicted of embezzling $412 belonging to one Henry McConnell, and appeals.

Briefly stated, the circumstances were these: The defendant was the managing partner in a firm of mortgage brokers, Perkins &

Company, in Lawrence. The firm sold a note and mortgage on some Iola property to Henry McConnell. Defendant was the mortgagee, and he assigned the mortgage to McConnell. The note was paid by draft to Perkins & Company on May 4, 1920. The proceeds of the draft were deposited in a Lawrence bank to the credit of defendant's firm, and defendant released the mortgage of record. McConnell was not apprised of the payment of the note. On the contrary defendant's firm paid him interest on the money up to and including the interest due in April, 1921. Failing to receive any payment of interest in October, 1921, he went to the office of Perkins & Company, and there ascertained that the mortgage had been paid off in May, 1920. McConnell made demand on defendant for his money. Defendant answered: "I haven't the money now. I will pay it sometime."

The conviction of defendant was pursuant to section 134 of the crimes act (Gen. Stat. 1915, § 3461), which provides:

"Any agent . . . who shall embezzle or convert to his own use . . . without the assent of his employer, any money . . . belonging to any such person, . . . which shall have come into his possession or under his care by virtue of such employment, office or trust, shall upon conviction thereof be punished, . . . or if any agent shall, with intent to defraud, refuse or neglect to deliver to his employer . . . on demand, any money . . . which may or shall have come into his possession by virtue of such employment, office or trust, . . . [exceptions] . . . he shall upon conviction thereof be punished, . . ."

It is first urged that there was no employment of defendant by McConnell and that defendant was not the agent or employee of McConnell. But the circumstances did disclose a relationship of employment, office or trust between defendant and McConnell. Certainly defendant was McConnell's agent for the purpose of collecting the principal and interest on the note; he cannot be heard to deny it when he assumed and exercised the function of collection agent for McConnell and did collect the money. In *The State v. Spaulding*, 24 Kan. (Dass. Ed.) 1, syl 1, ¶ 4, it was said:

"When one assumes to act as agent for another, he may not, when challenged for those acts, deny his agency. He is estopped, not merely as against his assumed principal, but also as against the state. One who is agent enough to receive money, is agent enough to be punished for embezzling it. An agency *de facto*,—an actual even though not legal employment,—is sufficient."

It is also urged that the relationship of defendant and McConnell was that of mere debtor and creditor, and while there may have been

some evidence to that effect, yet McConnell testified to the contrary:

"Q. Didn't they tell you in the first conversation that you had there at the office, in substance, on these mortgages that were turned over to you, we pay the interest, whether the maker of it pays it or not? A. No, sir; no word was said that way. They remit the interest, but they never suggested that they pay the interest whether the maker did or not.

"Q. And they also said, did they not, that when the mortgage was paid, or if it was paid before maturity, or anything of that kind, that they carried that fund for you and pay you the interest on it right straight through? A. No, sir, they didn't state that. That wasn't stated at all, about the—"

Under the foregoing evidence, the question whether defendant had embezzled or merely borrowed McConnell's money was for the jury to decide.

It was further contended that there was no evidence that the mortgagor paid the money to Perkins & Company, as the agent of McConnell, and that it was paid to defendant merely because he was the record mortgagee. The mortgagor probably knew nothing of the relationship between defendant and McConnell, but defendant knew that relationship very well. He knew the money belonged to McConnell, and notwithstanding that fact he applied the money elsewhere and discharged the mortgage of record, which not only discharged the debtor completely but fraudulently deprived McConnell of the money.

But it is argued that the money was not converted to the individual use of defendant. That contention is unsound. When the money was devoted to the bank account of the partnership of which defendant was a member and in which he was beneficially and personally interested, without the assent of the owner, there was a conversion of the money to his own use within the meaning of the crimes act.

Defendant also complains of the admission of incompetent and prejudicial evidence. This referred to testimony of certain witnesses who had conversations with defendant touching his disposition of other notes and mortgages which belonged to various individuals and which defendant Perkins had collected and discharged of record without paying the proceeds to the assignees entitled thereto. One of these witnesses narrated a typical incident:

"A. I went to see him in reference to a mortgage that was made by Minnie Herb and husband of Reno County, to the Perkins Trust Company for $1,000 and assigned to Mary E. Strong. I told him that my information was that

The State v. Perkins.

the mortgage had been paid, and that it was released, and he said it had been, and I asked him where the money was, and he said he didn't have it. I asked him when he received the money, and he said he had received it he presumed before he released the mortgage and it has been released, I couldn't say when, but some two or three years. It had been paid and the mortgage released. I asked him why he didn't turn the money, pay that money over to Mary E. Strong."

Counsel for Defendant: "We object to that as incompetent, irrelevant, and immaterial.

"The Court: Overruled.

"A. And he said that the custom of Perkins and Company was to hold the money until they got a suitable mortgage and then reinvest it, and I told him he had been holding this money now two years or three years and he had certainly had time to either pay the money over or reinvest it, and I asked him if he had any instructions from Mary E. Strong to reinvest it, and he said he didn't. . . .

"I talked with him about all of these mortgages. And he said they had been paid, and that he would settle with my clients as soon as money loosened up and times got better, but that he didn't have any money then, and I says, 'Frank, don't you know you are guilty of embezzlement, and that they will get you for this, somebody will get you.' And he says, 'I suppose they will.' Now then, there was a case of a man in El Paso, Illinois,—"

Counsel for Defendant: "Now, just before you go into that, I move the answer relating to this mortgage of Strong's be stricken out as incompetent, irrelevant, and immaterial, and not tending to prove any issue involved in this action, and simply a voluntary information on the part of the witness.

"The Court: Overruled.

This evidence showing defendant's usual mode of doing business was competent to prove intent, absence of mistake or accident, and that the withholding of the money from its owner and its disposition to the concerns of the partnership was pursuant to an unauthorized and consequently unlawful method of business practiced by the defendant. (See citations and excerpts in *The State v. King,* 111 Kan. 140, 144-150, 206 Pac. 883.) Furthermore, the trial court, in its instructions to the jury, carefully limited the significance to be attached to this testimony, thus:

"There is some testimony before you, gentlemen, in regard to the defendant having committed acts similar to the one charged here with property belonging to parties not connected with this action. This evidence is admitted, gentlemen, and is for your consideration only on the question of the intent of the defendant, and it should not be considered by you in determining any other element of the offense charged except the element of the intent of the defendant."

Complaint is made of this testimony:

"A. And in making that [similar transaction] up with F. M. Perkins, he

told me that that mortgage had been paid, as I recollect it, in 1915. I asked him why no accounting had ever been made to Mr. McGinnis, the owner of it, and he simply told me that the matter had been overlooked. I don't want to volunteer any information here, but I then suggested to him that I hardly thought that was overlooking the matter, and he then made some explanation about the customs of their business, told me it was the custom of loan companies. I took exception to that, on that occasion and on other occasions, for I had had some experience in the loan business myself, and we had a discussion about that."

Counsel for Defendant: "I move that the argument of the witness be stricken out.

"The Court: Overruled."

Here we think the court made a wrong ruling; the voluntary information of the witness and his exception to defendant's statement, and his statement as to his own experience in the loan business, should have been stricken out; but under the circumstances of this case, and after considering the defendant's own testimony as to his method of doing business we do not regard the ruling as prejudicially erroneous.

Another error is assigned on the exclusion of defendant's testimony:

"[Defendant].—The first time I knew McConnell had not got a new mortgage was when Mr. Dodds called my attention to it.

"I then looked it up and found that the mortgage had been paid off but had not been taken up; that is, we had not made the exchange.

"Q. You had not made any exchange? A. You understand that was our custom—to replace a paid-off loan by another loan. It was always our custom. We had exchanged hundreds of thousands of dollars that were entirely satisfactory. The people wanted it that way.

"[Counsel for state]: If the court please, we ask that that be stricken out as a conclusion on the part of the witness and not responsive to the question.

"The Court: It is stricken out."

This evidence might have been permitted to stand, but elsewhere the record shows that defendant testified both on direct and cross-examination as to his method of doing business; and here it cannot be denied that the objection "not responsive to the question" was well taken.

A final contention is that the trial court erred in its instructions touching defendant's employment and agency under the section of the crimes act for whose violation he was prosecuted, but this is disposed of under the discussion of the first assignment of error. The only practical defense which could have availed the defendant was the one clearly defined in the trial court's instructions:

"If you should find from the evidence that Henry McConnell authorized or permitted F. M. Perkins, Perkins & Company or some one acting on behalf of them or either of them, to use said fund for investment or otherwise, or if you should find as a matter of fact that the defendant F. M. Perkins or Perkins & Company were holding said sum or any part thereof for use by authority or permission of Henry McConnell, then the defendant would not be guilty of the crime charged in this count of the information, and he should be acquitted thereof."

The record contains no error and the judgment is affirmed.