## KNOX COLLEGE v. GRAY et ux.

### SAME v. ANDERSON et al.

(Circuit Court of Appeals, Eighth Circuit. April 28, 1924.)

Nos. 6399, 6468.

1. **Payment ⊂═65(6)—Principal and agent ⊂═19—Burden of proof on party making plea of payment and agency to receive payment.**

Burden of proof of payment rests on party making plea, and that one receiving payment was agent of creditor.

2. **Principal and agent ⊂═20(1)—Correspondence between alleged principal and agent admissible to show express agency contract.**

Correspondence between alleged principal and agent was admissible as bearing on question of express contract of agency, in action by alleged principal against third party.

Appeals from the District Court of the United States for the Southern District of Iowa; Martin J. Wade, Judge.

Actions by Knox College against J. A. Gray and wife and against J. H. Anderson and others. Decrees for defendants, and plaintiff appeals. Affirmed.

No. 6399:

George C. Gale, of Galesburg, Ill., and Addison G. Kistle, of Council Bluffs, Iowa (E. P. Williams, of Galesburg, Ill., and Higbee & McEniry, of Creston, Iowa, on the brief), for appellant.

Homer S. Stephens, of Clarinda, Iowa (C. R. Barnes, of Shenandoah, Iowa, Stephens & Thornell, of Clarinda, Iowa, and Ferguson, Barnes & Ferguson, of Shenandoah, Iowa, on the brief), for appellees.

No. 6468:

George C. Gale, of Galesburg, Ill., and Addison G. Kistle, of Council Bluffs, Iowa (E. P. Williams, of Galesburg, Ill., and George S. Wright, of Council Bluffs, Iowa, on the brief), for appellant.

W. C. Ratcliff, of Red Oak, Iowa, for appellees.

Before STONE and LEWIS, Circuit Judges, and PHILLIPS, District Judge.

⊂═For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

STONE, Circuit Judge. These cases are actions to foreclose mortgages securing promissory notes. The first (No. 6399) is against J. A. Gray and wife. The other (No. 6468) is against J. H. Anderson and wife and Burt J. Marvick and wife. The actions were separately tried and separately appealed. As the issues in both are essentially the same, they were argued and submitted together. There was no dispute that the notes and mortgages had been given and that the complainant had not itself received payment. The defenses were that payment had been made to an agent of complainant. The issue thus presented was whether the person who had received these payments was the agent of the college and authorized to receive such for it. These issues arise out of the following facts which are not questioned. There was in the town of Villisca, Iowa, an incorporated company, Villisca Investment Company, engaged in a general real estate, loan and investment business. The stock in the company was held by W. B. Woodward who was president and general manager and his brother, T. P. Woodward, who was secretary. The business seems to have been largely operated by W. B. Woodward who was the only individual connected with the company who represented it in any dealings with the college. The college was in the market to purchase desirable real estate mortgage loans. From 1906 until 1921, it had purchased many such loans from or through the company. Sometimes the purchases were of loans already made; sometimes it seems that applications for loans made to the company by the borrower were submitted by it to the college. In most, if not all, instances, certainly in the two here involved, the borrower paid the company a commission to secure the loan and expressly authorized it to act as his agent in securing the loan. The notes and interest coupons were made payable at the office of the company. The notes here in question were drawn payable to the college. The interest coupons on these loans were paid and delivered at the office of the company.

In the Anderson Case the loan had been made originally by Burt J. Marvick. Anderson purchased the property about the time the original principal note became due. Anderson and the college executed an extension agreement and Anderson executed interest notes covering the extension. These interest coupons, as they became due, were paid to W. B. Woodward at the company office and the coupons or interest notes delivered by him there.

In the Gray Case, Gray made his loan, through the procurement of W. B. Woodward, from the college, executing principal and interest notes payable to it. These interest coupons were paid by Gray to W. B. Woodward at the office of the company and he received the coupons there. It is undisputed that both Gray and Anderson paid to W. B. Woodward at the office of the company the full amount of the principal notes; that these sums were embezzled by W. B. Woodward who later committed suicide. The issue in each of these cases is whether or not W. B. Woodward, in receiving these payments, was acting as agent of the college.

[1] This issue comes into each of the cases through the pleas of payment by Anderson and Gray. The burden of proof of payment was rightly held by the court to rest upon the parties making the plea.

Therefore, the burden is upon them to establish that Woodward, in taking such payments, acted as the agent of the college.

[2] The case seems to have been presented to the trial court, as it is presented here, on the theory that there was both express and implied agency. The court below held there was express agency. This holding seems to have been based largely, if not entirely, upon a long line of correspondence between the college on the one part and the company and W. B. Woodward on the other. This correspondence consists of 204 letters which are correspondingly numbered as exhibits. Of these 204 exhibits, 54 deal directly with one or both of the indebtednesses here involved; the others refer to similar matters of other borrowers. Appellant contends that this correspondence was inadmissible. The claim of inadmissibility is founded upon the arguments, first, that the correspondence does not show agency but merely such communications as would result between the college and the company under the circumstances; second, that there could be no estoppel based upon this evidence unless the facts shown therein were known to and relied upon by the other party. Both of these grounds may be disposed of together. The matter of estoppel would be well urged in so far as implied authority is concerned, but would have no place or bearing upon the matter of express authority and the character of the letters, as showing agency or not, is a matter of weight of evidence rather than admissibility.

An attempt is made to differentiate between W. B. Woodward and the company and it is argued that even though the company might be found to have been the agent of the college for collection purposes, yet, if these payments were not made to the company but to W. B. Woodward personally, the college could not be charged therewith. We think this contention without foundation in the evidence. The company, being a corporation, must, of course, act through individuals and those who dealt with it must act with individuals representing the company. It clearly appears that W. B. Woodward was not only the president and general manager of the company, but was the active moving spirit therein and personally attended to all of the matters in which the college was interested. The correspondence shows that the college always addressed its letters to the company and that the letters written to the college were always on the company letterhead and were signed either "Villisca Investment Co., W. B. Woodward, President," or "W. B. Woodward." It clearly appears that Woodward was the only individual known to the college and its business with the company and that it recognized and dealt with him as fully representing the company. When borrowers from the college came to the company office to pay their interest or principal indebtedness, their transactions there were invariably with W. B. Woodward but it is going rather far to say that they intended to treat with him only as an individual and not as representing the company at whose office these payments were due and at which they were made.

There remains the question of whether the company was the express agent of the college in the collection of such character of indebtedness. This must be determined by the course of dealing between the college and the company. This is shown in the exhibits covering the corres-

pondence above referred to. We have considered this correspondence as a whole with the view of ascertaining the general relation between the college and the company in connection with collection of money due to the college for interest and principal on the indebtedness payable at the office of the company. We have, also, considered, in a chronological order, the correspondence particularly referring to the Anderson indebtedness and the correspondence particularly referring to the Gray indebtedness with a view of ascertaining the relation of the college and company as to those particular matters.

The letters particularly referring to the Anderson indebtedness are four letters during the time when Marvick owned the property and eighteen during the time when Anderson owned it. Chronologically arranged, this correspondence is in the exhibits following: (Marvick) 143, 144, 145, and 173; (Anderson) 202, 61, 31, 25, 92, 14, 90, 89, 111, 4, 110, 109, 3, 2, 113, 112, 1, and 7. The Gray correspondence chronologically arranged is found in the exhibits following. 173, 179, 175, 198, 69, 63, 57, 56, 44, 39, 26, 94, 95, 105, 104, 98, 22, 16, 93, 15, 9, 91, 89, 7, 111, 4, 110, 109, 3, and 2. It would serve no useful purpose to set out the contents of these numerous exhibits, either those of a general character or those particularly referring to the Anderson and Gray matters. It is necessary only to say that we have painstakingly studied them and, in our judgment, they show clearly that the company was charged, authorized and expected by the college to make these collections, both of principal and interest, and that in doing so it was the fully authorized agent of the college.

The decree in each of the cases should be and is affirmed.

⟐For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes