No. 25,400.

H. Elizabeth Walmer, Administratrix of the Estate of Edwin Walmer, Deceased, *Appellant,* v. James A. Redinger et al., *Appellees.*

SYLLABUS BY THE COURT.

Note and Mortgage—*Assigned and Assignment of Record—Payments to Loan Agent—Agency Loan Agent to Receive Payments on Note—Apparent Agency—Evidence.* A negotiable coupon note for $5,000 due in five years, secured by a mortgage on real estate, was executed to an investment company. It contained provisions that principal and interest should be payable at the office of the company or at such other place as the legal holder might from time to time designate. No change of the place of payment was ever made. It also provided that payments of principal in multiples of $100 might be made at the maturity of any coupon upon thirty days' notice. Within a few days after its execution the note was sold, being indorsed in blank with a guaranty of payment, and an assignment of the mortgage to the purchaser was duly recorded. The company had for some ten years sold mortgages to the assignee, and payments of principal and interest had been made to the company, and by it sent to him. The mortgagor paid the first three coupons to the company, which remitted the amount to the assignee, who sent the coupons in return. Later, at interest-paying time, payments on the principal of $1,000 and $500 were made to the company,

which retained them without accounting to the assignee, and thereafter as interest payments of a correspondingly reduced amount were made to it, it remitted the full amount of the coupons to the assignee. In an action by the assignee to recover the full amount of the note it is held that the evidence justified a finding that either the company was the agent of the assignee for receiving the payments, or the assignee by its course of dealing with the company was estopped to deny such agency.

Appeal from Johnson district court; JABEZ O. RANKIN, judge. Opinion filed July 5, 1924. Affirmed.

*S. D. Scott,* and *F. R. Ogg,* both of Olathe, for the appellant.

*W. D. Morrison, H. L. Burgess,* both of Olathe, and *S. F. Harris,* of Kansas City, Mo., for the appellees.

The opinion of the court was delivered by

MASON, J.: This case turns upon whether payments of interest and part of the principal of a negotiable note secured by a real-estate mortgage, made to a mortgagee after the execution and recording of an assignment, took place under such circumstances as to bind the assignee upon the theory that the mortgagee was his agent or that he had taken part in a course of dealing such as to preclude him from denying the agency.

On September 1, 1916, James A. Redinger executed to J. L. Pettyjohn & Co., of Olathe, a real-estate mortgage for $5,000, due in five years, bearing interest at six per cent per annum, payable semiannually. The principal and interest were made payable at the office of Pettyjohn & Co., or at such other place as the legal holder might from time to time designate. The makers were given the privilege of paying $100 or any multiple thereof upon the principal at any interest-paying time by giving thirty days' notice. On September 6, 1916, the note and mortgage were sold to Edwin Walmer, of Merriam, in the same county, the assignment being duly recorded on that date. The note was indorsed in blank, the indorsement including a specific guaranty of payment of both principal and interest. The mortgagor paid the first three interest coupons to the Pettyjohn company, which remitted the amounts to Walmer, who returned the coupons to the company; and payments on the principal were made to the company of $1,000 on September 1, 1918, and $500 on September 1, 1919, which it retained. After these payments on the principal, payments of interest were made to the company, a corresponding reduction in the amount being made, and the

company remitted the full amount of the coupons to Walmer. No payments were made on the last two coupons. On May 5, 1920, Redinger sold the land to Mrs. Mary B. Whiteley, who assumed payment of the mortgage debt, the deed to her reciting that $1,500 had been paid on the principal. Walmer died November 22, 1921, and this action was brought by his widow as administratrix to recover the full amount of the mortgage and the last two coupons. In the judgment that was rendered credit was given for the $1,500 payment to the Pettyjohn company and proportionate interest. The plaintiff appeals.

The statute authorizes payment of an assigned real-estate mortgage to be made to the mortgagee unless the assignment is recorded (R. S. 67-321), and the effect of the act is to charge the mortgagor with constructive notice of the change of ownership where such record is made. (*Detwilder v. Heckenlaible*, 63 Kan. 627, 66 Pac. 653.) The payments to the mortgagee, as such, were therefore without effect upon the rights of the assignee. The judgment is based upon a finding that the Pettyjohn company was the agent of the assignee to receive the payments, or at all events that the assignee was precluded from denying such agency by having participated in a course of dealing justifying a belief that it existed. The question presented is whether there was any substantial evidence to support this finding.

After the assignment the note was continuously in the possession of Walmer and was not at any time held by the Pettyjohn company. No other place of payment than the office of the company was ever designated and the note therefore was at all times payable there. This of course did not authorize a payment to be made at that place, without the production of the note, to anyone except its owner or his agent, or apparent agent, whose agency the owner by his own conduct was estopped to deny. (*Fowle v. Outcalt*, 64 Kan. 352, 67 Pac. 889; 8 C. J. 601-2; 3 R. C. L. 1289.) That is the rule where the law does not require or provide for a record of the assignment (8 C. J. 601, 602), and it applies with equal or greater force where under the statute a record has been made which imparts constructive notice to the mortgagor of the change of ownership. The omission of the assignee to designate a new place of payment is therefore important only as it may tend to aid in interpreting the real or apparent intention of the assignee with respect to accrediting the company as his agent.

Walmer v. Redinger.

"Although the fact that an instrument for the payment of money is made payable at some designated place is of some significance in determining the authority of a third person at the place designated to receive payment, yet, in and of itself, that it is made payable at a particular place is not sufficient to authorize its payment at that place to one other than the owner, unless the person receiving payment has possession of the instrument." (21 L. R. A., n. s., 52, Note.)

Walmer had at one time or another some six mortgages which he had purchased from the Pettyjohn company besides the one here involved. The company's books contained an account with Walmer from 1912 to 1921, showing about forty debit items and a like number of credits, the entries consisting solely of amounts. It showed some half dozen items of over $1,000 in pairs, presumably indicating purchases of mortgages. It showed $5,000 credited on September 5, 1916, and debited eight days later, probably referring to the purchase of and payment for the Redinger mortgage. In a number of instances debits of amounts varying from $75 to $255 are followed with credits for the same amount within a few days, seemingly based upon collections and remittances of interest. It is not possible, however, to determine definitely which of these entries refer to the Redinger loan. An abstract of this loan shown in one of the company's books gives its details—date, amount, security and like matters, and the two partial payments on the principal and the payment of the first three coupons. A former bookkeeper of the company testified that the company would send to Walmer checks for the interest about two weeks before it was due and that Walmer usually brought the coupons in in person. An undated letter from Walmer to the company read: "Your draft for $150 in payment for the James A. Redinger interest was received, and enclosed please find coupon for same." A letter from the company to Walmer, dated August 23, 1915, read: "Please find herein our draft No. 36,472, First National Bank, Kansas City, Mo., payable to your order, for $255, in payment of the following coupons due September 15, 1915: [three coupons described]. Please send us the coupons by return mail and oblige." A large number of similar letters were shown, the money being almost invariably sent one or two weeks in advance of maturity. On November 9, 1918, the company wrote Walmer saying two designated loans had been paid, asking him to send the papers, and inviting him to select other loans to replace them. On April 23, 1920, the company notified him by letter that another loan was due the first of the next month, asked him to send the papers, and men-

tioned other loans as suitable to replace it, saying: "Please let us know by return mail the amount you wish to have invested." The plaintiff testified that Walmer purchased a number of notes and mortgages from the Pettyjohn company; that some were paid in cash and in some cases new notes were given in place of the old ones; that the company would mail a check for the interest and Walmer would usually take the coupons to the company's office in person, and that this was also true with reference to payments upon the principal of a note; that he had a number of other investments besides the mortgages purchased from this company; that sometimes the person owing the note would pay the interest and principal direct to him, but usually the money was paid on the Pettyjohn loans to the company and transmitted by it. Walmer's son testified that his father had been dealing with the Pettyjohn company for eight or ten or twelve years, buying mortgages and notes during that time; that the custom was for the company to send the interest to him in advance of its maturity (although this was not always done), the coupons being then returned to the company—or the note, in the case of a full payment. To the question, "And that was practically a continuous course of business all during that time?" he answered: "Well, similar I suppose." The Redinger mortgage contained a clause by which the mortgagor agreed to keep a building insured and to deliver all policies to the mortgagee. Such an insurance policy was delivered to the Pettyjohn company, which retained it, giving Walmer a certificate acknowledging its possession.

The situation is somewhat analogous to that presented in *Fowle v. Outcalt*, 64 Kan. 352, 67 Pac. 889, where the assignee of a mortgage note was held bound by a payment made to the original payee by reason of having acquiesced in the payment of a number of coupons in the same manner. The case was decided after the enactment in 1897 and 1899 of the statute already referred to regarding the recording of assignments of mortgages, but the transactions out of which the litigation grew took place before that time, so that its provisions were not involved. The opinion laid considerable stress upon the fact that the mortgagor had no notice of the assignment, and some features tending to strengthen the debtor's position are not present here. However, the case was decided upon the theory that the evidence was sufficient to support a finding of real or apparent agency, and upon this issue the decision is applicable. Where the statute controls, because of the assignment not being recorded,

a payment to the mortgagee discharges the debt by its own force and not upon the theory that an agency is established, although the same considerations of policy are back of both the statute and the unwritten law.

In another case arising before the assignment-record statute was passed, payment of a mortgage note and its coupons to the mortgagee after an assignment was held not to bind the assignee, where at the time of such payments, which were made at a place other than that designated, the note and coupons bore indorsements in full to the assignee. (*Walter v. Logan,* 63 Kan. 193, 65 Pac. 225.) Stress was laid upon the circumstance that the indorsement on the coupons gave notice to the mortgagor of a change in ownership, but the facts were not sufficiently like those of the present case to make the result determinative here. A different conclusion was reached in *Doe v. Callow,* 67 Pac. 824, a Kansas case not officially reported, where the rights of the parties became fixed before the enactment of the statute relating to the record of assignments. There the mortgagee guaranteed the payment of the coupons at maturity and of the note within two years after it became due, and provision was made, in case of the mortgagor's default, for the delivery of the note and mortgage to the mortgagee for foreclosure. The mortgagor paid the interest and principal to the mortgagee at maturity and had no notice of a change of ownership until fifteen months after payment was completed. These facts were held to justify a finding that the mortgagee was the agent of the assignee.

An agency to collect was held to be established by the dealings between the mortgagee and assignee in *Hansford v. Meserve,* 97 Kan. 450, 53 Pac. 835, decided in 1898. In the official report "aware" is printed for "unaware" in the sentence, "The plaintiff was unaware that the company had sold the mortgage securities, but supposed it to be still the owner."

A payment of part of the principal of a mortgage debt, under a clause allowing part payments in multiples of $100 at the times when interest was due, has been held to be binding upon the mortgagee, although made to the broker who negotiated the loan, on the theory that the course of dealing and correspondence warranted a finding that the broker was the general agent of the mortgagee in the loan business. (*Hamlin v. Nace,* 99 Kan. 286, 161 Pac. 655.)

In the following cases the evidence was held not to show agency to receive payment: *Bronson v. Ashlock,* 2 Kan. App. 255, where

agency to collect the interest was held not to establish agency to receive any part of the principal before due. *Hall v. Smith,* 3 Kan. App. 685, where the payment was made at a different place from that designated. *Best v. Crall,* 23 Kan. 482, where the maker of a promissory note paid the payee after it had been indorsed and delivered to a bank. *Detwilder v. Heckenlaible,* 63 Kan. 627, 66 Pac. 657, where the borrower made the broker through whom a loan was obtained his agent to make payment. *Goodyear v. Williams,* 73 Kan. 192, 85 Pac. 300, where declarations of the alleged agent were held incompetent, and estoppel against the creditor was held not to have arisen from facts of which he had no notice.

The present case differs in some respects from any of those cited. The fact that the assignment was recorded, under the statute making such record constructive notice to the mortgagor, is an important element here. However, if the assignment had not been recorded the question of agency, real or apparent, could not arise, for in that situation the payment to the mortgagee would discharge the debt regardless of that matter.

This court is of the opinion that the evidence justified a finding that the Pettyjohn company either was actually the agent of Walmer for the purpose of receiving payments of the interest and part payment of the principal of the note or by its course of dealing had given the company such apparent authority in the matter as to create an estoppel to deny the existence of such agency.

The judgment is affirmed.

MASON, J. (dissenting): My own view is that the evidence does not warrant a finding of agency or estoppel—a conclusion to which these considerations seem to me to give support: The owner of the note, having recorded the assignment to him, omitted no duty he owed to the maker. There was no occasion for his designating a new place of payment, if he was satisfied, as he appears to have been, to have the debt remain payable at the company's office. To preserve his rights in their entirety it was necessary for him to have the coupons and note there on the date of their respective maturity in the hands of some one authorized to receive payment. His omission to do so might, by preventing a proper presentation for payment, release a party secondarily liable, but the effect as between the holder and the maker would merely be the same as a

tender (R. S. 52-701)—to stop the running of interest. He protected his own interests by retaining possession of the coupons and note until he received his money. When prior to the maturity of a coupon its amount was sent him by the company, which was an indorser and guarantor, he waived nothing by delivering the coupon in return. Whether or not the mortgagor in turning his money over to the company intended to make it his agent for its transmission to the owner of the note is immaterial. He could have protected himself fully by demanding the production of the papers and the indorsement of the partial payments on the note, and doubtless he would have taken this precaution if he had not had confidence in the company's financial responsibility. The entries on the company's books show considerable dealing between it and the assignee of the mortgage, but do not tend to establish agency. The mortgagor is not shown to have had knowledge of these transactions and so could not have been misled by them so as to make them the basis of an estoppel. No thirty days' notice of an intention to make the part payments on the principal appears ever to have been given, although this would be unimportant if the company had real or apparent authority to act for the holder of the note in all matters connected therewith, since it could then have waived the notice.

BURCH, J., joins in the dissent.