No. 25,555

MARY F. BRYNER, *Appellant,* v. (GEORGE M. REYNOLDS *et al.*) J. W. WHITNEY and MRS. J. W. WHITNEY, *Appellees.*

#### SYLLABUS BY THE COURT.

PROMISSORY NOTE—*Payment to One Not in Possession of Note—Agency to Receive Payment—Effect of Designating Place of Payment—Burden of Proof of Agency.* The facts considered, and *held,* Pettyjohn & Company were not agents of the holder of a note, payable to their order at their office and duly negotiated, to receive notice accelerating maturity of the principal of the note, and to receive payment of principal thus matured.

Appeal from Coffey district court; WILLIAM C. HARRIS, judge. Opinion filed January 10, 1925. Reversed.

*S. D. Scott,* of Olathe, and *Roscoe Graves,* of Burlington, for the appellant. *Joe Rolston,* of Burlington, for the appellees.

The opinion of the court was delivered by

BURCH, J.: The action was one to recover on a promissory note and to foreclose a mortgage securing the note. A defense of partial payment of the note was sustained, and plaintiff appeals.

Reynolds executed and delivered the note and mortgage to Pettyjohn & Company. The note was for $2,000, was dated November 1, 1916, was payable five years after date, and bore interest payable semiannually, on the first day of May and November each year, according to interest coupons attached. Principal and interest were payable at the office of Pettyjohn & Company, in Olathe, Kan., or at such other place as the holder might designate. No other place of payment was ever designated. The mortgage was recorded on November 24, 1916. On December 12, 1916, Pettyjohn & Company negotoated the note and assigned the mortgage in blank to the G. F. Carson Company, of Peoria,. Ill. On January 8, 1917, the Carson Company negotiated the note to plaintiff, Mary F. Bryner, inserted her name in the blank assignment of mortgage, and delivered the mortgage and assignment to her. The assignment was duly recorded on January 10, 1917. Mrs. Bryner placed the note and mortgage in her safety deposit box in a bank in Peoria, where they remained at all times material to this controversy.

In January, 1919, Reynolds sold the land to Whitney, who assumed payment of the mortgage. Whitney received an abstract of title which disclosed assignment of the mortgage to Mrs. Bryner, and from which he learned Mrs. Bryner was owner of the mortgage. He did not know Mrs. Bryner's address, never had any correspondence with her, and knew nothing of any relations between her and Pettyjohn & Company.

While Reynolds owned the land he sent checks to Pettyjohn & Company to pay his interest, and in due time received the coupons, stamped paid with the stamp of Pettyjohn & Company. After Whitney purchased the land he gave money to Reynolds to make the first two interest payments, and received the coupons, stamped paid, from Reynolds. Whitney remitted money direct to Pettyjohn & Company to pay the coupon due May 1, 1920, and within three days after remittance received the coupon, stamped as the others had been.

In January or February, 1920, Whitney had Reynolds write to Pettyjohn & Company and ask if Pettyjohn & Company would ac-

cept payment of $1,000 on the note. Pettyjohn & Company replied to Reynolds that they would accept such payment. The note provided the makers might make payments of $100 or any multiple thereof at maturity of the coupon due May 1, 1917, or at maturity of any subsequent coupon, on giving thirty days' notice. In April or May, 1920, Whitney had the Commercial Bank of Waverly send to Pettyjohn & Company for him a draft or check for $1,000, to apply on the principal of the note. Pettyjohn & Company sent Whitney a receipt for $1,000, stating the money was received as payment on the principal of the note. The money did not pass out of the hands of Pettyjohn & Company.

Whitney sent Pettyjohn & Company a check for $27.50, to pay interest due November 1, 1920, computed on the balance of the principal after deducting the payment of $1,000. On November 20, 1920, Pettyjohn & Company wrote Whitney as follows:

"Yours enclosing check for $27.50, balance due on interest on the George M. Reynolds loan, received. We have canceled and are enclosing herewith coupon for $55 due November 1, 1920."

Mrs. Bryner received $55, the full amount of this coupon.

The G. F. Carson Company was a corporation organized under the laws of Illinois and had its principal place of business at Peoria. When it sold the note and mortgage to Mrs. Bryner it guaranteed prompt payment of principal and interest without cost to the purchaser. About a month before maturity of a coupon the Carson Company would request that the coupon be forwarded to it for collection and remittance. Mrs. Bryner's brother, E. C. Foster, who looked after her business and had a key to her safety deposit box, would clip the coupon, and take it or send it to the Carson Company, who would give a receipt stating the coupon had been entered for collection and remittance. In due time the Carson Company would give its check for the amount of the coupon. In February, 1921, the Carson Company established a branch house in Olathe. Previous to that time it sent coupons to Pettyjohn & Company for collection. In this manner all coupons were collected except those maturing May 1 and November 1, 1921. These coupons, like all others, were for $55 each. The Carson Company received them in the usual way. Whitney tendered to the Carson Company $27.50 in full payment of each coupon as it fell due, and the tenders were refused. When the note fell due on November 1, 1921, Mrs. Bryner delivered it to the Carson Company for collection and

remittance. Whitney duly tendered the Carson Company the sum of $1,055 in full payment of principal and interest, and the tender was refused. There was a stipulation that the Carson Company sent to Pettyjohn & Company, for collection for the owners, notes and interest coupons as they became due, which the Carson Company had purchased of Pettyjohn & Company and had resold to customers. The facts embraced in the stipulation were immaterial because there was no evidence that Mrs. Bryner, Foster, Reynolds or Whitney knew about the practice and based conduct upon it. (See *Burnham v. Wilson*, 207 Mass. 378.)

The district court found Pettyjohn & Company were Mrs. Bryner's agents to receive payment of the $1,000 made on the principal of the note on May 1, 1920. In his answer Whitney alleged that Pettyjohn & Company were the duly authorized agents of Bryner up to May 1, 1921, to receive payments of principal and interest for her. There was no evidence that Mrs. Bryner ever appointed anybody her agent to receive for her the $1,000 paid to Pettyjohn & Company on May 1, 1920. There was no evidence she had any knowledge of the payment previous to May 1, 1920, and there was no evidence that she ever did anything, with knowledge of the facts, to ratify the payment as having been made to one authorized to receive it for her.

The answer alleged that Mrs. Bryner permitted Pettyjohn & Company to represent themselves to Whitney as her agents. To sustain this allegation it was necessary to prove that Pettyjohn & Company did represent to Whitney that they were agents of Mrs. Bryner, and then to prove that Mrs. Bryner knew the representation had been made, but interposed no objection, and allowed Whitney to act on it. There was no such proof relating to Whitney's payment of $1,000 to Pettyjohn & Company. In the correspondence between Reynolds and Pettyjohn & Company, as a result of which Whitney sent the money to Pettyjohn & Company, Pettyjohn & Company did not represent they were acting for Mrs. Bryner or anybody else. They were asked if they would take the money, and they said they would. There was no evidence that Mrs. Bryner had any knowledge of the correspondence. No occasion arose when she was called on to speak, or else by silence, to sanction an implication of agency, and a mere showing that one has assumed to act as agent of another is not sufficient to establish existence of the relation. (*Richards v. Newstifter*, 70 Kan. 350, 78 Pac. 824.)

The answer alleged that Mrs. Bryner estopped herself from denying that Pettyjohn & Company were her agents. The district court did not find estoppel. It found the fact of agency, and consequently the finding must have been made pursuant to an allegation in the answer that Mrs. Bryner "held out" Pettyjohn & Company as her agents. Whitney knew Pettyjohn & Company did not own the note. What ground did he have for believing that, when he delivered $1,000 to Pettyjohn & Company, he delivered it to Mrs. Bryner?

The note and coupons were payable at the office of Pettyjohn & Company. It is elementary law that naming a place of payment of a negotiable instrument does not make the keeper of the place agent of the holder of the instrument to collect it. In the case of *Adams v. Hackensack Improvement Commission*, 44 N. J. Law (15 Vroom), 638, the syllabus reads as follows:

"Naming a bank as the place of payment of a promissory note, bill of exchange or other obligation does not make the bank an agent for the collection of the paper or the receipt of the money due on it; and the debtor cannot make the bank the agent of the holder by depositing with it the funds to pay the paper.

"If maturing paper be left at the bank for collection the bank becomes the agent of the holder to receive payment. But unless the bank has been made the agent of the holder by indorsement of the paper or the deposit of it for collection, any money which the bank receives to apply in payment of it will be deemed to be money taken by the bank as the agent of the payor, and the loss sustained by the failure of the bank with the funds so deposited in hand will be the loss of the payor." (¶¶ 2, 3.)

In the opinion the court said (authorities cited being omitted at places where blanks occur):

"The contract of the maker, acceptor or obligor is to pay the holder of the paper, and the place for payment is designated simply for the convenience of both parties. Making a bill or note payable at a banker's is authority to the banker to apply the funds of the acceptor or maker on deposit to the payment of the paper. . . . If maturing paper be left with the banker for collection, he becomes the agent of the holder to receive payment; but unless the banker is made the holder's agent by a deposit of the paper with him for collection, he has no authority to act for the holder. The naming of a bank in a promissory note as the place of payment does not make the banking association an agent for the collection of the note or the receipt of the money. No power, authority or duty is thereby conferred upon the banker in reference to the note; and the debtor cannot make the banker the agent of the holder by simply depositing with him the funds to pay it with. Unless the banker has been made the agent of the holder by the indorsement of the paper or the deposit of it for collection, any money which the banker receives to apply in payment of it will be deemed to have been taken by him as the

agent of the payor. . . . Such a deposit, without some act of appropriation by the banker, does not create any privity of contract as between the banker and the holder of the paper. . . . The only effect of the payor having the money at the bank where the paper is payable is that it will enable him to plead a tender in exoneration of interest and costs of suit, provided he makes his tender good by payment of the principal into court. . . ." (p. 646.)

This decision is in full accord with the weight of modern authority. (Case note, 21 L. R. A., n. s., 52.)

The first coupon was due May 1, 1917. Reynolds, the maker, still owned the land. Mrs. Bryner had given him constructive notice that she owned the note and mortgage, by recording the assignment of mortgage, and she had not up to that time held out Pettyjohn & Company in any way as her agents to collect any money for her. Reynolds remitted to Pettyjohn & Company the amount of the coupon. When Pettyjohn & Company received the money they did so as agents of Reynolds. It was his money in their hands, and it did not and could not become Mrs. Bryner's money until it was appropriated to payment of the coupon with her authority. How did Pettyjohn & Company get from Mrs. Bryner authority to accept for her the money placed in their hands to pay this coupon? The answer is, by virtue of possession of the instrument. As soon as the coupon was paid Pettyjohn & Company forwarded it to Reynolds. This transaction was followed by seven others, three initiated by Reynolds for himself, two initiated by Reynolds for Whitney, and two initiated by Whitney for himself. They were all identical in every respect, and throughout the entire course of dealing nothing was added to or subtracted from the elements involved in payment of the first coupon to change the relations of the parties. In each instance Pettyjohn & Company were agents of the debtor to receive his money and to take up the coupon should it be presented at the place of payment. In each instance Pettyjohn & Company were agents of the creditor to receive payment of the coupon placed in their hands, should money to pay it be at the place of payment, and to deliver the coupon, if paid, to the debtor. In every instance this agency for the creditor was conferred by placing the coupon in the hands of Pettyjohn & Company for collection, and in no other way. The evidence tracing possession of the coupons from Mrs. Bryner through the Carson Company to Pettyjohn & Company was produced by Whitney himself. Throughout four years of dealing there was no instance in which Pettyjohn & Company were not put in possession of the paper. They were always in position to deliver

the coupons to Reynolds or to Whitney promptly on payment. They had no greater apparent authority when Whitney made his first remittance than they had when Reynolds made his first remittance. There never was any holding out of Pettyjohn & Company by Mrs. Bryner as her agents to receive payment, except by investing them with possession of the maturing coupons, and if the Carson Company had established its branch house at Olathe earlier, and had personally presented the coupons for payment at the office of Pettyjohn & Company, money sent to Pettyjohn & Company to take up the coupons would have remained at the sender's risk until the Carson Company brought in the coupons and received the money for them.

From the course of conduct described relating to payment of interest, the court found that Pettyjohn & Company were agents of Mrs. Bryner to receive payment of $1,000 on the principal of the note. The finding necessarily included a finding that Pettyjohn & Company were agents of Mrs. Bryner to receive the notice which had the effect of accelerating maturity of $1,000 of the principal of the note. These findings were made in face of the fact that Mrs. Bryner kept the note in her strong box in Peoria, Ill., had no knowledge of the negotiations pursuant to which Whitney sent money to Pettyjohn & Company to apply on the principal of the note, and had no knowledge that Pettyjohn & Company had received money for that purpose.

In the opinion in the case of *Best v. Crall*, 23 Kan. 482, it was pointed out that the maker of a negotiable note may always protect himself when making a payment by requiring the instrument to be produced, for indorsement of the payment if partial, and for surrender if paid in full; and if the maker pay the payee without requiring production of the note he does so at his peril. The circumstances may be such that the payee is in fact agent of the holder, but there is no presumption to that effect. In cases of this character agency must be proved, and the authorities are in substantial accord that collection of interest does not warrant a finding of agency to collect principal. (2 C. J. 621; 23 L. R. A., n. s., 414, 418; L. R. A. 1916B 860.)

The case of *Hoffmaster v. Black*, 78 Ohio St. 1, is similar in essential features to the one under decision. Black gave his note for $850, secured by mortgage, to Hood, and the note provided that principal and interest were payable at Hood's office. Hood nego-

tiated the note and mortgage to Hoffmaster, but the assignment of the mortgage was not recorded. Interest was payable semiannually, and was paid to Hood at his office, who receipted for it as "ag't." After maturity of the note a payment of $350 on the principal was made to Hood. After that the maker paid interest to Hood on the balance of the principal, but Hood remitted interest in full to the holder. The holder knew nothing about the form of Hood's receipts and knew nothing about the payment made on the principal. A judgment denying recovery for the full amount of the note was reversed. With reference to payment at the place designated in the note the court said:

"The burden, therefore, rests on the party making payment to show that the one receiving payment was authorized. This is particularly so if in the meantime, as in this case, the note has passed into the hands of a *bona fide* indorsee before maturity. The contract of the maker is to pay to the payee *or his order*. By the terms of his contract he is bound to take notice of the fact that his obligation is liable to turn up in the hands of another party at maturity. The mere designation of the place at which payment shall be made does not of itself alter the obligation of the maker as to the person to whom, or through whom, payment shall be made. He is still bound to see for himself that payment is made to the legal holder, whether he be the original payee or an indorsee, or to his authorized agent. He cannot safely pay to any person at the designated place who, in the absence of the securities properly indorsed, cannot show authority to receive payment for the party entitled to the money." (p. 6.)

With reference to the claim that agency to collect principal may be inferred from agency to collect interest the court said:

"To state the proposition in a concrete form, the plaintiff having recognized the course of dealing as to payment of interest through Hood may be presumed to have authorized him to collect interest; but no implied agency to collect the principal, or any part of it, could arise therefrom. These are accepted principles in the law of agency. . . . There was no recognition of the act of Hood in collecting a part of the principal, because the plaintiff did not know that the money had been paid to Hood, nor that the latter was deceiving the defendants by assuming to act for him. The cases are numerous and directly to the point that an authority to receive interest does not imply an authority to receive payments on the principal." (p. 8.)

The opinion of the court concludes as follows:

"When the defendants made payments to Hood without requiring the production of the securities it was no more than if they had intrusted such payment to a messenger boy. That which reached the plaintiff was good payment. That which did not reach the plaintiff was at their own risk." (p. 9.)

All that Mrs. Bryner ever did which might influence conduct of Whitney was to pursue the natural and reasonable business course of sending maturing coupons to the place of payment for collection. The only inference Whitney was authorized to draw from this course of conduct was that Pettyjohn & Company had authority to collect maturing interest coupons sent to them for collection. Principal could not be matured except on thirty days' notice given the holder of the note. Acceleration of maturity is a matter of consequence to an investor in mortgage securities. There is no rule of law, logic or morals which sanctions conversion of Pettyjohn & Company into agents of Mrs. Bryner to receive such notice merely because Pettyjohn & Company had been intrusted with possession of maturing coupons for collection. The notice which Whitney gave did not reach Mrs. Bryner. Maturity of' $1,000 of the principal of the note was not accelerated, and the payment of $1,000 was made before maturity to one not in possession of the note and not authorized to receive the payment for the holder.

Whitney contends that the case of *Walmer v. Redinger,* 116 Kan. 580, 227 Pac. 329, is identical in every respect with this one. In the Walmer case the evidence tending to show that Pettyjohn & Company were general financial agents of the holder of the note was such that the court held the inference of agency, or estoppel to deny agency, was justified. Other cases relied on by Whitney are sufficiently distinguished in the opinion in the Walmer case.

The judgment of the district court, that Pettyjohn & Company were duly authorized by plaintiff to receive payment of $1,000 made on the principal of the note by defendant Whitney, on May 1, 1920, is reversed, and the cause is remanded, with direction to modify the judgment in favor of plaintiff by including that sum and interest in the amount of her recovery.