No. 25,584.

THE JUNIATA COLLEGE, *Appellant,* v. ROBERT H. WARREN et al.,
*Appellees.*

### SYLLABUS BY THE COURT.

PRINCIPAL AND AGENT — *Evidence Establishing Agency — Estoppel to Deny.*
The evidence adduced to support a defense that a firm of loan brokers to
whom the defendant makers had executed and intrusted a note and mort-
gage, without consideration, were the agents of the assignee to whom the
note and mortgage were transferred and assigned before maturity, ex-
amined, and held insufficient to show that the firm of loan brokers were
the agents of the plaintiff assignee for the purpose of loaning the money of
the latter to the defendant makers; and *held,* that no element of estoppel
to deny agency is disclosed by the record; and *held,* also, that other minor
incidents noted in the opinion were insufficient to defeat plaintiff's right
to recover.

Appeal from Bourbon district court; EDWARD C. GATES, judge. Opinion
filed April 11, 1925. Reversed.

*A. M. Keene,* and *W. F. Jackson,* both of Fort Scott, for the appellant.
*W. P. Dillard,* and *Harry Warren,* both of Fort Scott, for the appellees.

The opinion of the court was delivered by

DAWSON, J.: This was an action on a promissory note and to
foreclose a mortgage on property given to secure its payment.

The facts were these: Defendants, Robert H. Warren and wife,
residents of Fort Scott, applied to Perkins & Company, loan brok-
ers of Lawrence, for a loan of $1,200, which defendants needed to
purchase a house and some town lots in Fort Scott owned by W. C.
Warren, a brother of defendant, but occupied by defendant and
wife. The application for the loan was delivered to one Longshore,
local agent for Perkins & Company. A day or two later, on Janu-
ary 2, 1919, defendant and wife executed a note for $1,200 to Per-
kins & Company, and to secure the same they executed a mortgage
on the house and realty they planned to buy with the money they
were borrowing. Defendant and wife delivered this note and mort-
gage to Longshore, agent of Perkins & Company, upon an under-
standing and agreement that the instruments should be held by
him until defendant could negotiate with his brother for the pur-
chase of the property and until the $1,200 loan for which the note

and mortgage were being given had been paid over by Longshore or Perkins & Company to defendants.

Longshore forwarded the note and mortgage to Perkins & Company, but no part of the $1,200 was ever paid to defendants. Some time later, through other means, defendant and wife acquired the property.

Perkins & Company disposed of the note and mortgage to plaintiff, and for a year and a half thereafter they paid the semiannual interest on the note out of their own funds. Eventually Perkins & Company ceased paying interest on the note; the head of the firm, F. M. Perkins, was sent to the penitentiary for a similar misdeed (*The State v. Perkins*, 112 Kan. 458, 210 Pac. 1091), and plaintiff brought this action, praying judgment for the face of the note and interest and to foreclose the mortgage given for its security.

Defendants answered with a general denial, alleging the facts outlined above, pleading want of consideration and that the note and mortgage were void. Defendants further denied that plaintiff had acquired the note and mortgage as an innocent purchaser before maturity; that F. M. Perkins or Perkins & Company was the agent of plaintiff to make investment for it; that plaintiff never recorded its assignment until August, 1921; that plaintiff, through its agent, F. M. Perkins or Perkins & Company, repeatedly promised defendants to release and discharge the mortgage; that plaintiff knew, or might have known by ordinary inquiry, that defendants had never paid the interest on the note, but plaintiff—

"Left the entire matter in the hands of its agents and representatives, said F. M. Perkins or F. M. Perkins & Company, and relied upon them, as its guarantors, to handle and control the collection of said note and mortgage; defendants further allege the fact to be that at the time the said plaintiff claims to have purchased said note and mortgage, that the real estate described therein was not owned by said defendants and they did not have the record title thereof, and that the record title was in the name of one W. C. Warren, and that said plaintiff is bound to take notice of the title as shown in the register of deeds' office of Bourbon county, Kansas; that the so-called application for said loan set out in plaintiff's deposition filed herein shows that said W. C. Warren was the owner thereof. That the pretended abstract of title to said property furnished to said plaintiffs by their agents, said F. M. Perkins or F. M. Perkins & Company, was not an abstract of the property covered by the mortgage, and an examination of said abstract by the said plaintiff would have put said plaintiff upon notice of the irregularities of said note and mortgage, and said plaintiff was bound to take notice of the abstract furnished with said note and mortgage as being an abstract covering the property which was

secured by said mortgage. . . . That it had presumptive notice that the defendants were not the owners of said real estate and that W. C. Warren was the owner thereof."

The matter now requiring to be reviewed is whether there was sufficient evidence tending to show that Perkins & Company were the agents of plaintiff in the investment of the college's money in this defeasible note and mortgage to permit that question of fact to be submitted to a jury for determination.

It is conceded that defendants never received any money or other consideration for the note sued on. While the mortgage was recorded shortly after it was intrusted to Longshore, the assignment from Perkins to plaintiff, executed February 11, 1919, was not recorded until August 6, 1921. Such evidence as was proffered by defendants to support the allegation of their answer that F. M. Perkins or Perkins & Company was the agent of plaintiff for the investment of its funds was as follows:

Juniata College at various times in past years had purchased notes and mortgages from Perkins & Company as investments for its endowment funds. On December 28, 1918, the secretary of plaintiff's board of trustees wrote to Perkins & Company that $1,000 or $1,200 of the college funds were available for investment. Some days later a check for $1,000, dated January 3, 1919, signed by the assistant treasurer of the college, was forwarded to and received by Perkins & Company on January 6, 1919.

On January 9, 1919, Perkins & Company replied:

"We are inclosing herewith copy of the application in our loan No. 23,498, Robert H. Warren, $1,200. We find that we are short of loans of $1,000 just at this time and have therefore selected the $1,200 loan. The Warren loan is upon a nice little property and we can give it our best recommendation, and know that your customer will be well pleased with his investment. Mr. Warren is in the dairy business and will be able to take care of his obligations promptly."

On January 11 plaintiff's secretary mailed to Perkins & Company a check for $200 to swell its $1,000 remittance of January 3 already in Perkins' hands, indicating a desire to take the Warren loan for $1,200, and that the same be assigned to Juniata College.

Defendants' note for $1,200 was of the usual sort of mortgage note, and provided that principal and interest were payable at the office of Perkins & Company, Lawrence, Kan.

On defendants' behalf, certain correspondence which passed be-

tween the county attorney of Bourbon county and Perkins & Company during the summer of 1921 was introduced. Its substance was a sharp and insistent demand that Perkins & Company should speedily correct the injury they had done to Warren and wife, and release the mortgage on the Fort Scott property. Perkins & Company's letters showed some equivocation, but did promise that the demands of the county attorney would be satisfied.

It was shown in evidence that the abstract of title which was delivered into the hands of plaintiff along with the note and mortgage did not pertain to the property concerned, but related to other property altogether.

The deposition of F. M. Perkins was taken at the penitentiary. He deposed:

"A. Perkins & Company were in the business of making loans to borrowers on real estate and selling the loans to their customers or to parties who had money to invest. We sold many loans to Juniata College, covering a period of many years. The Robert H. Warren loan of $1,200 on property in Fort Scott was sold to the college in the usual way. . . . Juniata College bought the Robert H. Warren loan just as they had been in the habit of buying our loans, or as any other investor would have done. . . . We had no contract or arrangement with the college to procure notes and mortgages for them. They would advise us from time to time when they had funds to invest, and we would describe some loans to them that we had on hand for them to select from. We would then send them the note, mortgage and other papers in the case they had selected. . . .

"Q. Did Perkins & Company, or yourself, act as agent for the Juniata College in procuring this R. H. Warren note and mortgage? A. We did not. We simply sold the college the loan in the usual way.

"*Cross-examination:*

"A. Sometimes they would send a remittance for a certain amount to be invested, and we would make selections for them, and send them the mortgage papers. Sometimes they would write, saying they expected to have a certain amount to invest, and ask us to submit some loans to them from which to make selections. Then the loans selected by them would be sent to them. It was done both ways. . . .

"Q. Was it the custom of the Juniata College to send you a draft or ask you to select some mortgages and pay you before they approved the mortgage? A. That was frequently done. Also, in exchanging papers where one mortgage would be paid, we would select another mortgage and send it in exchange.

"Q. Make investments for them? A. We did.

"Q. Collect interest for them? A. We did.

"Q. Sell mortgages? A. We did.

*"Redirect examination:*

"A.· This loan was selected from the loans that were on hand and being made, and was sold to them in the usual way.

*"Further cross-examination:*

"Q. You did make a selection for them? A. We did.

"Q. That was your custom? ·A. It was.

"Q. Investing and reinvesting their money? A. It was. . . . We had a large list of investors who were purchasers of loans and from whom we received money to make other loans. . . .

"Q. And the Juniata College was one of them, was it not? A. It was."

Do the foregoing facts go far enough to make it a jury question whether Perkins & Company were the agents of Juniata College to conduct this particular transaction with defendants, so that the college is bound by the fraud and chicanery of Perkins & Company and charged with notice that no *quid pro quo* had ever been given to defendants for their note and mortgage?

Assuming the truth of all that was shown in defendants' behalf, and giving it the strongest possible significance, it is nevertheless a question of law whether the business dealings of Juniata College and Perkins & Company thus shown constituted the relationship of principal and agent. It seems to us that the evidence merely discloses the characteristic conduct of a trusting customer towards a presumably honest broker of notes and mortgages. The college had dealt with Perkins & Company before, and had thereby acquired a large measure of confidence in their integrity. When the college had money to invest it relied on Perkins & Company as any customer relies on an honest merchant who had hitherto served him satisfactorily. It relied upon Perkins & Company not to palm off on it a worthless loan. A satisfied customer trusts the judgment of his merchant, but he does not thereby confer authority on the merchant to act for him in dealing with others nor ratify any transaction of the merchant in dealing with third parties. Juniata College granted no authority to Perkins & Company to loan its money to defendants. The fact that the record title to the mortgaged property did not stand in the name of defendants at the time they executed the note and mortgage here sued on is altogether insufficient to charge the college with notice that there were any infirmities in the $1,200 note acquired by plaintiff before maturity. Nor did the insignificant circumstance that an abstract covering some other property was de-

livered to plaintiff in lieu of a proper abstract pertaining to the property mortgaged by defendants to secure the payment of the $1,200 note avail aught as a defense to plaintiff's cause of action. Having confidence in Perkins & Company, the college did not scrutinize the title to the property pledged as security. To support the judgment defendants cite *Walmer v. Redinger*, 116 Kan. 580, 227 Pac. 329; *Knox College v. Gray*, 299 Fed. 179, and *In re Tilton*, 2 F. (2d) 799. In *Walmer v. Redinger*, supra, a course of business dealings between the holder and the broker was held sufficient to establish agency, or at least to estop the holder to deny the agency, where the maker had repeatedly made payments of interest and partial payments of principal to the broker on the assumption that the broker was the agent of the holder. In this case, however, plaintiff never did or failed to do a single thing which could have beguiled defendant and wife into a belief that Perkins & Company were the agents of Juniata College. When defendants intrusted their note and mortgage to Longshore and Perkins & Company, they had no reason to assume they were intrusting them to an agent of Juniata College. The case of *Knox College v. Gray*, 299 Fed. 179, had points of similarity to *Walmer v. Redinger*, but in neither of these cases can this court discern any substantial analogy to the case at bar. The same observation applies to *In re Tilton*, 2 F. (2d) 799, as may be seen by a perusal of syllabus 1, where it was held:

"Receipts acknowledging receipt of money for purposes of loans, the sums to be returned, together with interest, creates relationship of principal and agent between lenders and maker of receipts."

But here we simply have a case where somebody must lose through the dishonesty of a third party. Who should it be? By whose shortsightedness or negligence did this unfortunate situation arise? Not through any fault of plaintiff. It arose because defendants let their note and mortgage get out of their hands without receiving the money, by intrusting the instruments to Longshore, their fellow townsman, and Perkins & Company, Longshore's principal, who betrayed them. Defendants' evidence was insufficient to defeat plaintiff's cause of action, and judgment for plaintiff must be directed.

Reversed with instructions to enter judgment for plaintiff.

HARVEY, J., dissenting.