No. 20,783.

ISADORE SMITH, *Appellant*, v. THE HUTCHINSON BOX BOARD AND PAPER COMPANY, *Appellee*.

SYLLABUS BY THE COURT.

1. CONTRACT— *Debtor of Insolvent Corporation— Agreement to Accept Stock in New Corporation in Payment — Stock Refused — Debt Canceled.* Where an insolvent corporation's debtor, for the amount of his claim, agrees to accept stock in a new corporation organized to protect creditors and those interested in the old corporation and to take over its business, and the stock is issued and tendered to such debtor, but is refused by him, his claim against the old corporation is canceled.

2. SAME — *Trial — Instructed Verdict — Error.* In a jury trial where there is evidence which tends to prove a cause of action in favor of the plaintiff, it is error for the court to instruct the jury to return a verdict in favor of the defendant.

3. SAME. Where each of the parties to an action requests the court to instruct the jury to return a verdict in his favor, neither party con-

sents that the court may withdraw the case from the consideration of the jury, or give a peremptory instruction in favor of the other party.

Appeal from Reno district court; FRANK F. PRIGG, judge. Opinion filed July 7, 1917. Reversed.

*Carr W. Taylor, Walter F. Jones,* and *Eustace Smith,* all of Hutchinson, for the appellant.

*C. M. Williams,* of Hutchinson, for the appellee.

The opinion of the court was delivered by

MARSHALL, J.: The plaintiff brought this action to recover an amount claimed to be due him under contracts, and to recover damages for the breach of the contracts. At the conclusion of the evidence the court instructed the jury to return a verdict for the defendant. Judgment was rendered for the defendant and the plaintiff appeals.

The plaintiff entered into two contracts with The Western Straw Products Company, a corporation, by which that company constituted the plaintiff its agent for the purchase of waste paper, and agreed to pay him eight dollars per ton therefor. Under the contracts the company became indebted to the plaintiff in the sum of $426.22. The company became insolvent and could not pay the plaintiff, who then ceased delivering paper under the contracts. Those interested in the company, desiring that its business be continued, reorganized it by forming a new corporation, the Hutchinson Box Board and Paper Company, defendant herein. The plan of the reorganization was that creditors and those interested in the Western Straw Products Company should take stock in the new corporation in settlement of their claims and interests. By signing the following written instrument the plaintiff agreed to take stock for his claim:

"Hutchinson, Kansas, October 14th, 1913.

"I agree to take common or preferred stock at my option in a new company to be organized to take over the property of the Western Straw Products Company in lieu of the sum of $480.28 [$426.22] due and owing me by the 'Western Straw Products Company for waste paper sold and delivered to them.

"This agreement is conditional on a sufficient number of bondholders and creditors signing a similar agreement to guarantee that the bondholders and creditors are favorable to the taking of such stock for their bonds and claims."

Stock in the sum of $425 and $1.22 in money were tendered to the plaintiff, but he refused to accept either.   Emerson Carey was active in the reorganization of the company.   There was evidence that tended to show that during the negotiations between Emerson Carey and the plaintiff concerning stock in the new corporation, Emerson Carey stated that if the plaintiff had a contract with the old company it would be good with the new company—that the new company would take the waste paper under the contracts with the old company.   Shortly after the new corporation was organized Emerson Carey, as president, wrote the following letter:

"HUTCHINSON, KAN., Dec. 29, 1913.

"Mr. Lee L. Wilson, Co LaFayette Box Board & Paper Co., LaFayette, Ind.

"DEAR MR. WILSON:

".   .   .   .   I am handing you herewith copy of contract made by the old company with one I. S. Smith for waste paper.   This looks very ridiculous and foolish to me and it would be my idea to terminate this contract under the sixty-day clause immediately.   If this meets with your judgment, as soon as you arrive on the ground you might get C. M. Williams, a local attorney who does some business for the company, to draft such notice as he thinks would meet the situation and have it delivered in such manner as he suggests, to Mr. Smith.   It occurs to me that these matters should be entirely in the hands of the company.   The old contracts are in our files.   I advised with our attorney this morning and he said this could be terminated with such notice.

Yours very truly,

EMERSON CAREY, *President.*"

A few days after this letter was written the following notice was delivered to the plaintiff:

"HUTCHINSON, KAN., January 9th, 1914.

"Mr. I. S. Smith, Hutchinson, Kansas.

"DEAR SIR:

"This is to notify you that The Hutchinson Box Board & Paper Co., successors to 'The Western Straw Products Co., Hutchinson, Kansas, cancels Contract of April 23d, 1913, and supplement thereto, dated April 25th, 1913, to take effect 60 days from date.

Yours very truly,

The Hutchinson Box Board & Paper Co.,

By O. S. WESPE, *Sec'ty.*"

Smith v. Paper Co.

Before the expiration of the sixty days named in the notice the following letter was written to the plaintiff:

"HUTCHINSON, KAN., February 26, 1914.
"Mr. I. S. Smith, Hutchinson, Kansas.

"DEAR SIR:

"As your contract with this company on waste paper expires March 9, 1914, under the sixty-day clause, notification sent you January 9, we would suggest that any accumulation of paper that you may have that you want to ship us be delivered prior to that time, as after March 9 all previous quotations are withdrawn, and we will name you our price upon request on shipments after that date.

Yours very truly,
The Hutchinson Box Board & Paper Co.,
By LEE L. WILSON, *General Manager*."

After the notice was given the plaintiff delivered a carload of paper to the defendant and received eight dollars per ton therefor. The Western Straw Products Company is not a party to this action.

The plaintiff alleged that the defendant assumed all the rights, liabilities, and obligations of the old company, but his petition contained no allegation of fraud on the part of the new corporation.

1. The first cause of action set out in the plaintiff's petition was for the recovery of the $426.22 which was due him from the old company, and for which he agreed to take stock in the new one. There was no evidence to show that the defendant had in any way agreed to discharge that debt. The negotiations between the plaintiff and Emerson Carey concerning the contracts for furnishing waste paper were not made a part of the plaintiff's agreement to take stock in the new corporation. If it is claimed that the adoption of the contracts by the new corporation entered into the plaintiff's agreement to take the stock, then the evidence to show what was said about the contracts would not be admissible for the reason that it altered or varied the writing signed by the plaintiff. To sustain the plaintiff's first cause of action the adoption of the contracts must have been collateral to, and independent of, the agreement to take stock. When the stock in the new corporation was tendered to the plaintiff his claim against the old company was canceled. There was not sufficient evidence to sustain the plaintiff's first cause of action.

2.. In his second and third causes of action the plaintiff sought to recover damages for the breach of the contracts. Emerson Carey's statements to the plaintiff, concerning the contracts with the Western Straw Products Company, were made by him while promoting the new corporation, but before it was organized.

"The general rule undoubtedly obtains at law that corporations can not be bound by acts done or promises made in their behalf before they come into existence. Until organized, a corporation has no being, franchises, or faculties. Its promoters, or those engaged in bringing it into being, are in no sense identical with the corporation, nor do they represent it in any relation of agency, and they have no authority to enter into preliminary contracts binding the corporation, unless so authorized by the charter." (7 R. C. L. 80.)

(See, also, 1 Thompson on Corporations, 2d ed., § 91; and 10 Cyc. 262; and the following notes: 13 Am. St. Rep. 28; 17 Am. St. Rep. 161; 26 L. R. A. 544; 4 A. & E. Ann. Cas. 669.)

While Emerson Carey did not have power to bind the new corporation by any contract or statement made by himself before that corporation was organized, yet it could ratify or adopt any contract made by him for its benefit. This rule is supported by the authorities above cited. (See, also, *Electric Co. v. Mining Co.*, 91 Kan. 116, 136 Pac. 924.) The letters and the notice, as above set out, contained some evidence tending to show that the defendant recognized that the plaintiff's contracts with the old company were in force with the new one. That evidence should have been submitted to the jury.

3. At the conclusion of the evidence the plaintiff requested the court to instruct the jury to return a verdict in his favor on each of the three causes of action set out in his petition, and the defendant moved the court to instruct the jury to return a verdict in its favor. The defendant's motion was sustained. The defendant states:

"Both parties to the action having asked the court to instruct the jury to return a verdict on the evidence, it was up to the court to either instruct a verdict as claimed by the plaintiff or to instruct a verdict for the defendant."

Neither party, by requesting a peremptory instruction in its favor, consented that the court might withdraw the case from the jury or give a peremptory instruction in favor of the other party.

The judgment is reversed and a new trial granted.