No. 24,537.

THE RAWLINS COUNTY STATE BANK, *Appellee,* v. MATT C. RUMMEL and THE KANSAS AUTO SALES COMPANY (MATT C. RUMMEL, *Appellant*).

SYLLABUS BY THE COURT.

1. PROMISSORY NOTE—*Commercial Indorsement—Holder in Due Course.* The following, "For value rceived I hereby guarantee the payment of the within note and any renewal of same, and hereby waive protest, demand and notice of nonpayment thereof," indorsed on a negotiable promissory note which is transferred under that indorsement is sufficient, so far as the indorsement is concerned, to constitute the purchaser a holder in due course.

2. SAME—*Special Findings—Contradictory to General Verdict.* The answers to special questions submitted to the jury were contradictory to the general verdict.

3. SAME. *Plaintiff an Innocent Holder—Evidence.* The evidence tended to show that the plaintiff knew nothing about the promissory note on which the action was based until the transaction in which the note was purchased and that no officer or employee of the plaintiff then had or received any information of any fraud practiced on the maker by the payee of the note. *Held,* that such evidence satisfied the burden of proof on the holder to show that it had no notice of the fraud.

4. SAME. A promissory note given to a corporation was indorsed by it and by its president and was delivered to a bank which gave to the president personally credit in a checking account for the amount of the note. There was no evidence to show when the money was checked out of the bank. *Held,* that the bank was not thereby deprived of the rights of a holder in due course.

Appeal from Rawlins district court; WILLARD SIMMONS, judge. Opinion filed November 10, 1923. Affirmed.

*J. H. Briney,* of Atwood, *Bennett R. Wheeler, S. M. Brewster,* and *John L. Hunt,* all of Topeka, for the appellant.

*C. A. P. Falconer,* of Atwood, for the appellee.

The opinion of the court was delivered by

MARSHALL, J.: This is an action by the plaintiff, the purchaser of a promissory note given to the Kansas Auto Sales Company, signed by Matt C. Rummel, and transferred to the plaintiff. Judgment was rendered in favor of the plaintiff against the Kansas Auto Sales Company by default and against Matt C. Rummel on answers to special questions by the jury, which returned a general verdict in favor of Matt C. Rummel, who appeals.

The defense to the note was that it had been obtained by the payee, the Kansas Auto Sales Company, by fraud and that the plaintiff was not the holder of the note in due course. The evidence tended to show that E. H. McKinney, president of the Kansas Auto Sales Company, and Charles E. Scott, agent of the company, solicited Matt C. Rummel to purchase stock in the Auto Sales Company; that the purchase was made; and that the note sued on was given for the stock purchased. The evidence also tended to show that E. H. McKinney and Charles E. Scott, to induce Matt C. Rummel to purchase the stock, represented to him that it was worth much more than the price asked; that it would pay large dividends; that it would soon double in value and might raise to $500; and that, if Matt C. Rummel would give his note for the stock, they would hold the note and not transfer it.

Answers to special questions were returned by the jury as follows:

"1. What officer or employee in The Rawlins County State Bank first learned that the defendant, Matt C. Rummel, had given the note sued on to The Kansas Auto Sales Company? Answer: Henry Holthus.

"2. When did the above named officer or employee first learn that the defendant, The Kansas Auto Sales Company, had the note of the defendant, Matt C. Rummel, sued on herein? Answer: Sep. 18, 1920.

"3. Did the officer or employee in said bank first learn that said note was in existence in the transaction at which the note was purchased? Answer: Yes.

"4. Was the officer of the bank who purchased the note told by E. H. McKinney at the time or before said purchase as to what was said or done by said E. H. McKinney or Charley E. Scott, when the defendant signed the note? Answer: No.

"5. Was the officer of said bank who purchased said note or any other officer or employee in said bank told by E. H. McKinney or any other person at the time of the purchase or at any other time before the purchase of said note of any false or fraudulent representations on the part of any person

in connection with the signing of said note by defendant, Matt C. Rummel? Answer: No.

"6. Do you find from the evidence that anything shown from the evidence to have been said when said note was signed has been proven to have been false, fraudulent and knowingly false and fraudulent when told to defedant? Answer: Yes.

"7. What did the plaintiff pay to E. H. McKinney, President of the Kansas Auto Sales Company, for said note, if anything? Answer: $475.00.

"8. Did the plaintiff first learn that the defendant, Matt C. Rummel, had signed the note and that there was such a note in existence, in the transaction at which it bought the note? Answer: Yes.

"9. On what date was the note signed by defendant, Matt C. Rummel? Answer: Sep. 17, 1920.

"10. On what day was the note sold and delivered to the plaintiff? Answer: Sep. 18, 1920.

"11. On what date was the writing and words stamped on the back of the note sued on? Answer: Sep. 18, 1920."

1. It is first contended by the appellant that the indorsement on the note was not such as to give the plaintiff the rights of an innocent holder. The indorsement was as follows:

"For value received I hereby guarantee the payment of the within note and any renewal of same, and hereby waive protest, demand and notice of nonpayment thereof.                               "KANSAS AUTO SALES CO.,

"E. H. McKINNEY."

The appellant says:

"It is not contended by the appellant in this case that an endorsement on the back of a note carrying a guaranty together with waiver of protest, demand and notice of non-payment is not such an endorsement as may convey a good title, free of defenses, to a *bona fide* purchaser, but it is contended that the endorsement on the back of the note in controversy goes further than that, and is not a mere endorsement of the note with a guaranty of payment of the note, but is in effect a guaranty of the payment of the indebtedness evidenced by the note, and a guaranty of payment of notes that might in the future be executed in renewal of the note given."

Section 6557 of the General Statutes of 1915 reads:

"An instrument is negotiated when it is transferred from one person to another in such manner as to constitute the transferee the holder thereof. If payable to bearer, it is negotiated by delivery; if payable to order, it is negotiated by the indorsement of the holder completed by delivery."

The note in controversy was transferred to the plaintiff in such a manner as to constitute it the owner and holder of the note.

Section 6579 of the General Statutes of 1915 reads:

"A holder in due course is a holder who has taken the instrument under the following conditions: (1) That it is complete and regular upon its face; (2)

that he became the holder of it before it was overdue, and without notice that it had been previously dishonored, if such was the fact; (3) that he took it in good faith and for value; (4) that at the time it was negotiated to him he had no notice of any infirmity in the instrument or defect in the title of the person negotiating it."

There was nothing on the face of the note or in the indorsement to show that the plaintiff was not a holder in due course.

So far as the note in controversy was concerned, the writing on the back of it transferred it to the plaintiff. If that writing contained matter unnecessary in an indorsement, the rights of the purchaser could not be affected thereby unless the additional matter was such as to give him notice of a defect in the note as between the parties thereto. The guaranty of payment of the note and of others given in renewal of it did not give any notice of any defect in the note or in the title of the holder thereof.

In *Kellogg v. Douglas Co. Bank*, 58 Kan. 43, 48 Pac. 587, the following language was used:

"An indorsement made on the back of promissory note in the following language: 'For value received, we hereby guarantee payment of within note at maturity, waiving demand, protest, and notice of protest,' signed by the payee of the note, is a commercial indorsement as well as a guarantee of payment; and, the note being negotiable in form, is sufficient to pass a valid title to the paper and protect an innocent purchaser thereof." (Syl. 413.)

In *Lumber and Coal Co. v. Robbins*, 104 Kan. 619, 621, 180 Pac. 264, the court said:

"Although questioned, the transfer of the note from the plaintiff to the bank amounted to a commercial indorsement. It was an assignment without limitation and also a guaranty of payment, and this has been held to pass title to the paper the same as a blank indorsement, as well as a guaranty of payment. The note being negotiable in form, the writing constituted a commercial indorsement which passed full title to the note free from equities as between the maker and the payee."

The discussion in *Farnsworth v. Burdick*, 94 Kan. 749, 147 Pac. 863, is pertinent here although not directly in point. The indorsement on the note was such as to give to the plaintiff the rights of a holder in due course.

2. The appellant contends that the answers to the special questions did not conflict with the general verdict. The evidence tended to show that the note was executed on September 17, 1920, the day before the plaintiff purchased it. The answers to special questions established that the plaintiff first learned that the note was in ex-

istence on the day it was purchased; that neither at that time, nor at any time before, was any officer or employee of the plaintiff bank told by McKinney or any other person of any false representations on the part of any person at the time the note was signed; and that the plaintiff paid $475 for the note. Those findings did not directly state that the plaintiff was a purchaser for value before maturity without notice of any defect in the note, although indirectly the answers to the questions did say those things. The jury found that false representations had been made to Matt C. Rummel when the note was signed by him, but the jury in effect found that the bank had no notice of those false representations. The answers to the special questions did conflict with the general verdict.

3. It is argued that the court was not justified in setting aside the general verdict and rendering judgment on the special questions. To support this argument, it is contended that by the general verdict, the jury found that fraud had been practiced by the Kansas Auto Sales Company on Matt C. Rummel to procure the execution of the note sued on and that therefore it was incumbent on the plaintiff to show that it was a purchaser in due course for value before maturity. The appellant contends that there was no evidence to show that the plaintiff was such a purchaser. By the answers to the special questions, the jury in effect found that the plaintiff was such a purchaser. If there was evidence to support those answers, the argument of the appellant must fail. An examination of the evidence shows that there was abundant testimony to support those answers. The evidence which tended to prove the facts found in the answers to the special questions was sufficient to prove that the plaintiff was a purchaser of the note without knowledge of the fraud of the Kansas Auto Sales Company.

4. Another matter is urged to show that the court was not justified in setting aside the general verdict and rendering judgment on the special questions. The evidence tended to show that the plaintiff purchased the note from the Kansas Auto Sales Company through its president, E. H. McKinney, and paid $475 for the note, which was for $500; and that E. H. McKinney was given credit in the bank for the $475 paid. The appellant argues that because it was not shown that the money had been paid to McKinney before the bank learned that fraud had been practiced in procuring the note, it could not rely on the fact that it was a purchaser in due course. Before the defendant can successfully rely on this proposition, he should show

that the money was in the bank when it received notice of the fraud. At the time the note was purchased, the bank was a purchaser in good faith without notice of fraud. Under the argument of the defendant, those rights as such purchaser continued until the bank had notice of the fraud. There is no evidence abstracted to show that the bank received notice of the fraud until this action was commenced. The note was given September 17, 1920, and this action was commenced August 4, 1921. There is no presumption that the $475 remained in the bank for that length of time. If the defendant desired to rely on the fact that the money was in the bank when it received notice of the fraud, he should have proved that the money was there at that time.

The judgment is affirmed.