Mitchell v. Perkins.

No. 25,702.

OTIS C. MITCHELL et al., *Appellants*, v. (F. M. PERKINS) H. C. BRINKMAN et al., *Appellees*.

SYLLABUS BY THE COURT.

1. BILLS AND NOTES—*Form of Indorsement—Holder in Due Course.* Under the negotiable instruments act, a writing on the back of a negotiable promissory note in these words, "For value received, I hereby assign and transfer the within note together with the mortgage securing the same to Mr. and Mrs. H. C. Brinkman. (Signed) F. M. Perkins, Without recourse," accompanied by delivery of the note before its maturity to the persons named in the writing, is an indorsement of the note, following *Farnsworth v. Burdick,* 94 Kan. 749, 147 Pac. 863; id. 95 Kan. 642, 147 Pac. 863; and that part of paragraph 2 of the syllabus and of the concluding paragraph of the opinion in *Nelson v. Southworth,* 93 Kan. 532, 144 Pac. 835, at variance therewith is overruled.

2. SAME—*Holder in Due Course—Constructive Notice.* The fact that the public record of land titles disclosed that the makers of a promissory note and mortgage had no record title to the property they assumed to mortgage to secure the payment of their negotiable promissory note was not sufficient to charge the indorsees, to whom the note had been assigned and transferred, with notice of the note's infirmities nor destroy their rights as holders in due course.

3. SAME—*Note and Mortgage—Bona Fide Purchaser—Duty to Examine Abstract.* The fact that the indorsees to whom the note and mortgage given as security were assigned and transferred failed to demand an abstract of title to the property, which abstract would have disclosed that the title did not stand in the name of the mortgagors at the time the mortgage was executed and recorded, was not sufficient to charge the parties acquiring the note by indorsement with notice of infirmities in the note nor require them to meet defenses which would have been good against the original payee.

4. SAME—*Holder in Due Course—Evidence.* For the purpose of borrowing money, plaintiffs executed their negotiable promissory note and mortgage on property they planned to buy. They delivered the instruments to an agent of the payee, without receiving the money therefor. The payee sold, transferred and assigned the note and mortgage to third parties before maturity. Plaintiffs brought an action to cancel the assignment and to quiet their title, alleging that the transferees acquired the note and security with notice of infirmities or with such notice of probable defects in the title to the property mortgaged to secure the payment of the note as put them upon inquiry. *Held,* that the evidence inherent in the circumstances set out in the opinion was insufficient to sustain plaintiffs' cause of action, and a judgment in favor of defendants for the amount of the note and to foreclose the mortgage was not erroneous.

29—118 KAN.

Appeal from Elk district court; GEORGE J. BENSON, judge. Opinion filed May 9, 1925. Affirmed.

*A. F. Sims,* of Howard, for the appellants.

*John J. Riling,* and *Edward T. Riling,* both of Lawrence, for the appellees.

The opinion of the court was delivered by

DAWSON, J.: This is another case where the makers of a promissory note and mortgage for borrowed money let the instruments get out of their hands without receiving the money therefor.

In May, 1920, the plaintiffs, husband and wife, desired to buy a house and town lots in Longton, and applied to one McCutchan, local agent of F. M. Perkins, a loan broker of Lawrence, for a loan of $1,500 with which to pay for the property. Plaintiffs executed a note and mortgage on the property they planned to buy, payable to the order of F. M. Perkins, for $1,500, dated May 1, 1920.

Plaintiffs intrusted the note and mortgage to McCutchan, who assured them he would keep them at his office until the money came. McCutchan broke faith with plaintiffs and forwarded the instruments to Perkins. The mortgage was recorded on June 9, 1920, and on June 22, 1920, Perkins sold, assigned and transferred the note and mortgage to H. C. Brinkman and wife without recourse. The assignment of the mortgage to the Brinkmans was recorded December 1, 1921. Plaintiffs never received a cent for their note and mortgage. They had no deed to the property at the time they executed the mortgage thereon, but afterwards procured a conveyance of it, and temporarily borrowed the money to pay for the property from Mitchell's mother.

McCutchan died a violent death, and Perkins was sent to the penitentiary for one of a number of dishonest transactions not greatly different from the one here narrated. (*The State v. Perkins,* 112 Kan. 458, 210 Pac. 1091; *Juniata College v. Warren,* ante, p. 228, 235 Pac. 98.)

On October 24, 1922, the plaintiffs brought this action to quiet their title against Perkins and Brinkman and wife, setting up the facts narrated above, including the fact of assignment of the mortgage from Perkins to Brinkman and wife and of the registration of that assignment on December 1, 1921, and alleging that—

"All of which facts and circumstances were known to each and all of the above named defendants and particularly to Mr. and Mrs. H. C. Brinkman and were known before and at the time of the receipt and placing of record

Mitchell v. Perkins.

of any pretended assignment thereof; that said mortgage deed and any note in the sum of $1,500 which it was intended said mortgage would secure is null and void and of no force and effect against these plaintiffs but that said mortgage deed casts a cloud upon the title of these plaintiffs and ought to be removed."

Plaintiffs' prayer was for a decree quieting their title, to cancel and set aside the assignment, and for an adjudication that they were the owners in fee as against defendants, and for all other appropriate relief in equity.

Defendants Brinkman and wife answered denying such material parts of plaintiffs' petition as was necessary for them to traverse, and in appropriate recitals set up their *bona fide* ownership of the note and mortgage as holders in due course, set up plaintiffs' default in payment of principal and interest according to the tenor of the note; and defendants prayed judgment on the note and to foreclose the mortgage given as its security.

Plaintiffs replied, denying that defendants were owners and holders of the note and mortgage in due course, and—

"For a further reply allege that said defendants took said note and mortgage with full knowledge as alleged in the petition or with knowledge of such facts that would have put the ordinary prudent man upon notice."

To sustain the issues in plaintiffs' behalf they made the most of what odds and ends of evidence might be gleaned or deduced from the circumstances and correspondence which passed between plaintiffs and Perkins, McCutchan and Perkins, and Brinkman and plaintiffs.

A jury was waived; the trial court heard the evidence, and found generally and specially for Brinkman and wife, gave judgment accordingly, and decreed foreclosure of the mortgaged property to satisfy the judgment.

Plaintiffs appeal, contending first that the note was not transferred by indorsement but was delivered to defendant upon an assignment, under which, plaintiffs say, the defenses available against the original holder are good against the Brinkmans'. The assignment read:

"For value received, I hereby assign and transfer the within note together with the mortgage securing the same to Mr. and Mrs. H. C. Brinkman.

"F. M. Perkins,
"Without recourse."

Plaintiffs cite *Nelson v. Southworth*, 93 Kan. 532, 144 Pac. 835, to support their argument. It is undeniable that the concluding para-

graph of the opinion in that case, although not necessary to the righteous decision reached therein, does support plaintiffs' position. But neither the concluding paragraph of that opinion nor the corresponding part of the second section of the syllabus were necessary to that decision, since the trial court found *on the evidence* that the transferees were not innocent holders in due course and that they acquired them *pendente lite*. However that may be, in *Farnsworth v. Burdick*, 94 Kan. 749, 147 Pac. 863, the effect of the adoption of the negotiable instruments act was carefully considered with particular reference to the matter of assignments executed on the back of the instrument, and the decision virtually overruled that part of *Nelson v. Southworth*, supra, relied on by plaintiffs. It was not so declared in the latter opinion, and indeed the main features of the opinion in *Nelson v. Southworth*, state good law still cited by this court. See *Stevens v. Keegan*, 103 Kan. 79, 84, 172 Pac. 1025; and *State Bank v. Weiser*, 117 Kan. 389, 393, 232 Pac. 613. But since the decision in the Farnsworth case, however, this court has consistently held that a signature on the back of a note is an indorsement of it unless that signature is accompanied by words which clearly, not inferentially, indicate a contrary purpose by the party signing it; and the mere addition of other words which do not clearly indicate an intention that the party signing his name on the back of the note is to be bound in some other capacity is ineffective to destroy the significance of the signature as an indorsement. (R. S. 52-604; *Plow Co. v. Losey*, 104 Kan. 400, 179 Pac. 358; *Leach v. Urschel*, 112 Kan. 629, 632, 633, 212 Pac. 111; *Trust Co. v. Trust Co.*, 113 Kan. 311, 214 Pac. 610; *State Bank v. Rummel*, 114 Kan. 597, 220 Pac. 255; *Bank v. Bank*, 116 Kan. 303, 226 Pac. 999.)

In the opinion denying a rehearing in *Farnsworth v. Burdick*, 95 Kan. 642, 643, 147 Pac. 863, it was said:

"In this case, a motion for rehearing has been filed, alleging that this court probably overlooked *Nelson v. Southworth*, 93 Kan. 532, 144 Pac. 835; that the court is mistaken as to the weight of authority on the effect of the word 'assign' in an indorsement on the back of a negotiable note; and that a party receiving a note in payment of a preëxisting debt is not a holder in due course. . . .

"We have carefully considered our previous decisions, the condition of the law on this subject in the other states, and the negotiable-instruments law of this state, and have again reached the conclusion announced in the opinion in this case shown in *Farnsworth v. Burdick*, 94 Kan. 749, 147 Pac. 863, to which we now adhere."

This court is constrained to hold that the note in controversy was

transferred to Brinkman and wife by indorsement within the meaning of the negotiable instruments act as construed in *Farnsworth v. Burdick,* supra, and the later decisions; and to terminate, if possible, the occasional recurrence of controversy over this proposition the court holds that any doctrine or dictum in our earlier decisions to the contrary is either superseded by the negotiable instruments act or overruled by our later decisions interpreting that act.

The second proposition urged by plaintiffs is that the Brinkmans were chargeable with the notice imparted by the public records which, on June 20, 1920, when they acquired the note, disclosed that plaintiff then had no title to the property they had assumed to mortgage. This contention is correct, but not the consequences plaintiffs would deduce therefrom. If plaintiffs had not thereafter acquired title to the property they had already mortgaged, of course the security for the note sued on would have been of little worth. But it is not at all unusual for a party acquiring a promissory note, either as payee or indorser, to get whatever collateral security is obtainable to strengthen the validity of the note; and it would never do to declare judicially that the holder of a negotiable instrument takes it at his peril if the security for its payment is not as legally valid and binding as the principal obligation itself purports to be. Such a doctrine would throw the commercial world into a turmoil, and place the prudent business man who exacted security for his bills receivable in a worse fix than the careless man who dealt in negotiable instruments without any sort of security. It is elementary that mere constructive notice of defects is insufficient to defeat a negotiable instrument in the hands of an otherwise innocent holder. (*Bank v. Reid,* 86 Kan. 245, 120 Pac. 339; *Gigoux v. Moore,* 105 Kan. 361, 366, syl. ¶ 2, 184 Pac. 637; *Thresher Co. v. West,* 108 Kan. 875, 876, 196 Pac. 1061; *Gigoux v. Griffith,* 109 Kan. 275, 278, 199 Pac. 103; *Bell v. Klusman,* 115 Kan. 606, 224 Pac. 56; Note in 44 L. R. A., n. s., 395, *et seq.*) These plaintiffs are in a predicament which commands the court's sympathy, but the court cannot rescue them from the consequences of their own folly by yielding assent to the doctrine contended for by their counsel. (*Harris v. Drenning,* 101 Kan. 711, 719, 168 Pac. 1106.) At the time plaintiffs executed the mortgage they had already acquired a slight, defeasible interest in it—they had a contract to purchase it, had paid $100 on the purchase price, and were in possession—so regardless of the defective state of their title at the time they

mortgaged it, the mortgage was perhaps worth something as security, and plaintiffs' interest was properly subjected to foreclosure when they made default on the note.

Plaintiffs argue this same point from a somewhat different angle, as follows: The Brinkmans did not receive an abstract from Perkins at the time they bought the note. It is urged that an abstract would have shown that plaintiffs had no title, that Brinkmans were making an investment in real estate securities, that common caution required the Brinkmans to exact an abstract from Perkins to satisfy themselves as to what they were buying, and that their failure to demand an abstract and have it examined before buying the note and mortgage is such lack of good faith and ordinary caution that they cannot recover. If these incidents were sufficient to raise a controverted question of fact as to whether the Brinkmans had notice of the note's infirmities or notice of anything sufficient to put them on inquiry as to its validity—which the court cannot admit—then such question would be controlled by the determination of the district court as trier of that issue of fact, and its finding reads:

"That the statements, allegations and averments contained in defendants, Mr. and Mrs. Brinkman's answer, are true and correct."

The correspondence which passed between the parties concerned in the fraud or otherwise involved in this lawsuit has been examined. It was of no importance so far as concerned the parties in this appeal. Some specious discussion is devoted to the fact that the property was the homestead of plaintiffs, but how that fact should or could be held to alter or lessen the responsibility of plaintiffs for the instruments to which they had solemnly bound themselves and which they had intrusted to rogues who betrayed them does not appear.

This case does not differ in principle from one decided a month ago, where it was said:

"But here we simply have a case where somebody must lose through the dishonesty of a third party. Who should it be? By whose shortsightedness or negligence did this unfortunate situation arise? Not through any fault of plaintiff. It arose because defendants let their note and mortgage get out of their hands without receiving the money, by intrusting the instruments to Longshore, their fellow townsmen, and Perkins & Company, Longshore's principal, who betrayed them." (*Juniata College v. Warren*, ante, p. 228, 233, 235 Pac. 98.)

The judgment is affirmed.

HARVEY and HOPKINS, J. J., dissenting.