No. 25,916.

L. P. SENTNEY, *Appellee,* v. THE CENTRAL CATTLE LOAN COMPANY, J. C. HOPPER et al., *Appellants.*

SYLLABUS BY THE COURT.

1. APPEAL AND ERROR—*Review—Motion for New Trial—Necessity.* Record examined and held to show: (a) That appellants filed a motion for a new trial; (b) that it was filed in time; (c) that the motion sufficiently directed the trial court's attention to the trial error involved in directing a verdict; and (d) that appellee's objections to a consideration of this appeal on its merits are not sustained.

2. TRIAL—*Direction of Verdict—Operation and Effect of Motion.* In an action on promissory notes, where the issues raised disputed questions of fact upon which evidence pro and con was introduced, following which plaintiff moved for an instructed verdict and defendant moved for judgment on the pleadings and all the evidence, and defendant's motion was overruled and plaintiff's motion was sustained, *held,* that defendant did not waive its right to have the disputed questions of fact submitted to a jury by reason of such motion and the trial court's ruling thereon—following *Smith v. Paper Co.,* 101 Kan. 274, 166 Pac. 484; *Dannefer v. Aurand,* 106 Kan. 605, 189 Pac. 371.

3. CORPORATIONS—*Officers—Authority to Indorse Notes—Sufficiency of Evidence.* The evidence to sustain a corporation's defense of want of its president's authority to bind it by indorsement and guaranty of certain promissory notes, examined, and held sufficient as against the plaintiff holder's motion for an instructed verdict in his behalf, and to require that the cause be submitted to a jury.

Appeal from Reno district court; WILLIAM G. FAIRCHILD, judge. Opinion filed November 7, 1925. Reversed.

*Carr W. Taylor* and *E. T. Foote,* both of Hutchinson, for the appellants.
*C. M. Williams* and *D. C. Martindell,* both of Hutchinson, for the appellee.

1. Appeal and Error, 3 C. J. §§ 862, 863.   2. Trial, 38 Cyc. p. 1549; 18 A. L. R. 1433; 26 R. C. L. 1080.   3. Corporations, 14a C. J. § 2257; 12 A. L. R. 130; 7 R. C. L. pp. 643, 644.

The opinion of the court was delivered by

DAWSON, J.: The plaintiff brought this action against the makers and indorsers of five promissory notes, to wit:

Note of James H. England, for $2,000.
Note of W. I. Bowman & Co., for $4,000.
Note of Polled Hereford Stock Farm, for $4,000.
Note of George D. Sinclair, for $1,248.43.
Note of Carl S. High and J. D. Halloran, for $1,800.

The payee of each of these notes was the Central Cattle Loan Company, of Hutchinson, and they came into the possession and ownership of plaintiff, indorsed by the payee by its president, and by J. C. Hopper individually. The indorsement of the England note is typical of them all:

"For value received we hereby guarantee the payment of this note. Notice and protest waived.—CENTRAL CATTLE LOAN COMPANY. By J. C. HOPPER, Pres. J. C. HOPPER."

On the back of each of the notes were also various entries of payments of interest and showing various extensions of time because of such payments. The several notes were secured by distinct chattel mortgages on herds of cattle, and when the action originated, foreclosure of these mortgages was prayed for. Afterwards, however, probably on account of misjoinder, plaintiff dismissed all the makers out of this lawsuit, and the cause proceeded against the Central Cattle Loan Company and J. C. Hopper.

The loan company answered with a general denial, and alleged that the notes were the property of Hopper at the time plaintiff acquired them, and that he bought them from Hopper individually; that plaintiff knew that the loan company did not authorize Hopper to place its indorsement on the notes, and that plaintiff acquired the notes with full knowledge that the negotiation of the notes to him was the individual transaction of Hopper and not of the loan company, and that the various payments of interest were made by Hopper, and the extensions of time released the loan company of all liability. This answer concluded with a prayer for judgment in its behalf, or in the alternative if it were subjected to a judgment because of its indorsements on the notes that the property of Hopper individually be first exhausted before its property should be subjected to execution.

Sentney v. Central Cattle Loan Co.

Hopper, individually, filed a lengthy answer, alleging various matters not now important, one of which was his reason for indorsing the notes personally.

Plaintiff replied, traversing the allegations of the answers and further alleging that all extensions of time of payment on the notes were made at the request and with the consent of the Central Cattle Loan Company, through its president, J. C. Hopper, who was duly authorized to act in its behalf.

On these issues the cause was heard; evidence *pro* and *con* was introduced at length. Plaintiff moved for an instructed verdict; the defendant loan company moved for judgment on the pleadings and all the evidence. The loan company's motion was overruled, and plaintiff's motion was allowed.

Judgment was accordingly entered for plaintiff. The loan company appeals, urging several errors, the gravity of which depends upon a review of the evidence. Appellee has challenged the appellant's right to such review on the ground that no motion for a new trial was presented. To meet this objection appellant has filed a supplemental abstract containing a motion for a new trial. Appellee makes rejoinder that this motion was filed too late, but appellant's supplemental abstract shows that the jury's directed verdict was returned on January 28, 1924, and appellant's motion for a new trial was filed January 31, 1924, which, of course, was in time. Appellee also urges that the motion for a new trial did not cover the matter of any error involved in directing a verdict, but it seems to have been sufficiently urged on several grounds set out in the motion, viz.:

3d. Because of erroneous rulings of the court.

4th. Because of erroneous instructions of the court.

7th. Because of error on the part of the court in instructing the jury to return a verdict for the plaintiff.

Another point urged by appellee against appellant's right to a jury trial is based on the fact that it filed a motion for a judgment "upon the pleadings and all the evidence." At the conclusion of the evidence both parties moved for judgment. The record reads:

"By [counsel for plaintiff]:

"Comes now the plaintiff and moves the court to instruct the jury to return a verdict in favor of the plaintiff and against the defendants, upon the undisputed testimony in the case, for the reason that as a matter of law under

said testimony the plaintiff is entitled to judgment against the defendants for the amount of said notes sued upon in this action.

"By [counsel for defendant]:

"Comes now the defendant, The Central Cattle Loan Company, and moves the court for judgment upon the pleadings and all of the evidence introduced in this case, for the reason that it is shown thereby that the said plaintiff is not entitled to recover a judgment against the said Central Cattle Loan Company.

"By the court:

"The ruling of the court is that the motion for an instructed verdict on the part of the defendants and each of them is overruled, and that the motion for an instructed verdict on the part of the plaintiffs is sustained. Exceptions allowed."

On behalf of appellee it is contended that by the filing of this motion defendant waived its right to have the disputed issues of fact submitted to a jury. But the consequences of presenting its motion for judgment did not reach so far. Presumably in good faith the defendant believed that the pleadings and evidence justified a judgment in its behalf. It does not follow, however, because it was mistaken in that belief it was utterly wrong in all its other contentions and that it was not entitled to any further consideration at the hands of the court and jury. That would be penalizing the defendant unduly—savoring of that faraway time when an adverse ruling on a demurrer was disastrous to the demurrant notwithstanding he had a meritorious cause. (7 Bac. Abr. Pleas, 662 *et seq.*; 1 Chitty on Pleadings, 16th Am. ed., 832 *et seq.*) A motion for judgment or for an instructed verdict is somewhat similar to a demurrer under the code. (*Thresher Co. v. Nelson*, 106 Kan. 716, 189 Pac. 907; 7 Standard Proc., 25.) There is an analogy between the present case and that of *Dannefer v. Aurand*, 106 Kan. 605, 189 Pac. 371, in which both parties filed motions for a directed verdict. Plaintiff's motion was denied and defendant's motion was sustained, and the jury gave an instructed verdict for defendant. The judgment based thereon was reversed, this court holding that by urging his motion for judgment plaintiff did not thereby waive his right to a jury nor estop himself to insist that there was a conflict in the testimony. This court held that it would be harsh and technical to rule that because of his motion for judgment plaintiff was not entitled to have the disputed facts submitted to a jury. To the same effect was *Smith v. Paper Co.*, 101 Kan. 274, 166 Pac. 484, which was an action for money due on certain contracts. At the conclusion

of the evidence, plaintiff filed a motion for an instructed verdict in his favor. Defendant filed a similar motion. This court said:

"Neither party, by requesting a peremptory instruction in its favor, consented that the court might withdraw the case from the jury or give a peremptory instruction in favor of the other party." (p. 278.)

In *Manske v. San Benito Land Co.*, 191 Ia. 1284, 184 N. W. 345, 18 A. L. R. 1430, the syllabus reads:

"Motions for a directed verdict, made by both hostile parties at the close of all the testimony, do not constitute an implied waiver of a jury *when the testimony does, in fact, present a jury question as to the facts.*" [Italics in official report.] (See, also, comprehensive note covering various views of this question in 18 A. L. R. 1433 *et seq.*)

It follows that none of the appellee's objections to a consideration of this appeal on its merits can be sustained.

Passing then to the sufficiency of the evidence to require its submission to the jury, there was a good deal of testimony which tended to prove, if the jury should give it credence, that the plaintiff acquired the notes in suit through business transactions with J. C. Hopper personally and that the Central Cattle Loan Company had nothing to do with them. There was also evidence tending to show that Hopper was without authority to use the name of the defendant corporation in these personal business transactions with plaintiff; that the corporation books did not disclose any transactions through which these notes could have passed directly to plaintiff or intermediately through Hopper, and that neither the board of directors nor any of its responsible officials other than Hopper had notice or knowledge of the sale or negotiation of these notes to plaintiff or to Hopper. It was also shown that the name of the corporation had been indorsed on the back of these notes so that they might be marketed in the East and that when they came back from the East it was agreed between Hopper and plaintiff that the indorsements of the corporation should be erased from the notes before they were indorsed by Hopper for transfer to plaintiff; but as an afterthought plaintiff preferred that the corporation's indorsement should not be erased, "that it would spoil the looks of it," and that the entire consideration paid by plaintiff for the notes was given to Hopper and not to the corporation, and that plaintiff knew at the time he acquired them that the corporation was not a party to their transfer to him. It was also shown that Hopper personally paid the interest on these notes and that their various renewals were the result of

negotiations between Hopper personally and plaintiff. It was also shown that Hopper pledged or assigned to plaintiff vast tracts of lands in Kansas, Illinois and elsewhere to secure the payment of Hopper's personal borrowings from plaintiff; and the fact that the makers of these notes were dismissed out of this action and that the securities given therewith were released was not without evidential significance to show that the acquisition of these notes by plaintiff was through personal transactions with Hopper in which the corporation was not concerned.

It is needless to summarize at greater length the defendant's evidence. On the other hand, it has to be admitted that plaintiff's testimony and some other evidence tended to show that the corporation, with the tacit sanction or acquiescence of its board of directors, had long been conducted as a one-man institution by Hopper, its president, and that the private business affairs of Hopper had been so interwoven with the business of the corporation that it would have been difficult, if not impossible, for an ordinary purchaser of these notes to ascertain whether they were genuine assets of the corporation, carrying its valid indorsements, or whether they were merely nominal bills receivable of the corporation with its colorable indorsements, but actually personal assets of Hopper set afloat in the name of the corporation for his private purposes. Of course if the corporation gave its sanction to such a use of its corporate name, or if its responsible directors tacitly or by acquiescence permitted Hopper to control and use the corporation in such manner, and plaintiff acquired the notes in reliance on the corporation's indorsements and without knowledge or notice, the corporation had a good defense thereto, then the corporation is liable as indorser and guarantor of these notes, otherwise not.

In 7 R. C. L. 450-453 it is said:

"§ 436. The president of a corporation is its executive officer. Within the scope of his duties, as the head of the corporation, he has the power to act without direct authority of the directors. . . . Still the president of a corporation when acting for the corporation is merely its agent and cannot act so as to bind the corporation beyond the scope of his authority. . . . The president cannot be regarded as the agent of the corporation for the purpose of ratifying his own acts any more than for conferring authority upon himself in the first instance to make a contract. . . . Like other agents, he must derive his authority from the board of directors or from the corporation; therefore the circumstances of each individual case must have, within certain limits, controlling force. Irrespective of the inherent powers of the president, there can be no doubt that the board of directors may invest the president with authority to act as chief executive officer of the company. This may be

done either by an express resolution, or by acquiescence in a course of dealing. A person dealing with the president of a corporation in the usual manner, and within the powers which the president has been accustomed to exercise without the dissent of the directors, is entitled to assume that the president has actually been invested with those powers. . . . And it is held that when a contract is made in the name of a corporation by the president, in the usual course of business, which the directors have the power to authorize him to make, or to ratify after it is made, the presumption is that the contract is binding on the corporation until it is shown that the same was not authorized or ratified. Yet when he performs an act, not incidental or pertaining to the chartered business of his corporation, nor engrafted thereon by a well-established usage, it must, as a general rule, be alleged and proved that he was duly authorized by the directors. . . .

"§ 437. Though the corporation has power to borrow money, the president has no inherent power to borrow money for it. So there is no inherent power in the president to sign the name of the corporation to commercial paper, and to render the corporation liable, in addition to showing the signature of the corporation by its president to a promissory note, the authority of the president must be shown. Nor has the president inherent authority to indorse or transfer commercial paper belonging to the corporation."

In our own jurisdiction it has been held that a corporation is not necessarily bound by the act of its managing officer in a matter in which the officer acts for himself as if he had no official relations with it (*Wickersham v. Chicago Zinc Co.*, 18 Kan. 481; *Bank v. Northup*, 82 Kan. 638, 643-649, 109 Pac. 672). See, also, *Robins v. Murdock*, 69 Kan. 596, 77 Pac. 596; *Stagg v. Fair Association*, 105 Kan. 600, 185 Pac. 893, syl. ¶ 3. And if the defendant corporation were an ordinary indorser, notice of default of the principal obligors would have to be promptly made or it would be relieved of liability. (*Bank v. Clark*, 111 Kan. 439, 208 Pac. 549.) But under our own decisions the corporation was none the less a commercial indorser, although the recitals on the back of the note also bound it as a guarantor. (*State Bank v. Rummel*, 114 Kan. 597, 220 Pac. 255; *Mitchell v. Perkins*, 118 Kan. 449 and citations, 235 Pac. 1036.) However we view this lawsuit we are always turned back to the question whether by authorization, acquiescence, ratification or otherwise, Hopper as president was authorized by the corporation to indorse and guarantee these notes, and the evidence on that point required the determination of a jury to settle it. Appellant presents other arguments to support its appeal, but they need not now be considered, since enough has been shown to require that the judgment, if the district court be reversed and the cause remanded for a new trial.

The judgment is reversed.