No. 28,275.

THE INTERNATIONAL HARVESTER COMPANY OF AMERICA, *Appellee,* v. W. H. WATKINS, *Appellant.*

(272 Pac. 139.)

Opinion filed December 8, 1928.

F. D. Boyce, of Minneapolis, James V. Humphrey and Arthur S. Humphrey, both of Junction City, for the appellant.

C. W. Burch, B. I. Litowich and La Rue Royce, all of Salina, for the appellee.

The opinion of the court was delivered by

HUTCHISON, J.: The errors of which complaint is made in this case are the setting aside of the general verdict in favor of the defendant for $486, and the answers to a number of special questions and the rendering of a judgment in favor of the plaintiff, the International Harvester Company, on six notes given by the defendant for the purchase of a tractor and harvester-thresher. The plaintiff had sued upon the six notes given by the defendant to local dealers for the tractor and harvester-thresher and assigned before maturity to the plaintiff harvester company. The answer admitted the execution of the notes and for defense alleged agency of the local dealers for the plaintiff company, breach of warranty, that the notes were not negotiable, and that plaintiff was not a holder in due course. The answers to special questions that were stricken out were those finding the local dealers were agents of the plaintiff, the relation being shown by written contracts between them and the plaintiff, which the court held as conclusive on that subject and contrary to the special findings. The answers of the jury that remain relate to the question of breach of warranty and the compliance by the defendant with all the prerequisites on the part of the defendant before his return of the property and his demand for rescission. The amount of the general verdict rendered represented payment made by the defendant upon the purchase price.

We will pass over the question of agency, assuming, without deciding, that there was no error as far as that feature of the case is concerned, and will consider the two remaining questions as to the negotiability of the notes and whether or not the plaintiff company was a holder in due course.

Our attention is directed to the inconsistent nature of the indorse-

ment on each of the notes, the first part of which is an unconditional indorsement for value received, together with a guarantee of payment. This portion is printed and is followed by the words "without recourse" in writing before the signature. The usual rule of construction in such cases is to infer that the written words were intended instead of the earlier printed words of guarantee with which they are inconsistent. This would make it an indorsement without recourse and would not impair the negotiable character of the instruments. (R. S. 52-409.) Neither would the guarantee in the indorsement, if not replaced by the written words following, impair their negotiable character. (*Kellogg v. Douglas Co. Bank,* 58 Kan. 43, 48 Pac. 587; *Lumber and Coal Co. v. Robbins,* 104 Kan. 619, 180 Pac. 264; *State Bank v. Rummel,* 114 Kan. 597, 220 Pac. 255.)

Appellant insists that the notes are not negotiable because they contain orders and promises to do acts in addition to the payment of money. The face of each note contains the following paragraph after the formal part and above the signature, differing only as to the number of other notes and the name and number of the article of machinery purchased:

"This note (with 1 other) is given for McCormick-Deering Tractor No. T. G. 38413 and I hereby agree that title thereto, and to all repairs and extra parts furnished therefor, shall remain in the payee, owner or holder of this note until this and all other notes given therefor shall have been paid in money, and if at any time he shall deem himself insecure, he may take possession of said property and hold the same until all of said notes and the expenses of such repossession shall have been paid, and if default is made in the payment of this or any other of such notes, or if said property or any part thereof is levied upon, or the undersigned attempts to sell or remove the same, then the owner or holder thereof may declare this and every other such note due, and may take or retain possession of said property, and sell the same at public or private sale, with or without notice, pay all expenses incurred thereby, including expense for repossessing, storing, reconditioning and reselling the same, and apply the net proceeds on this and other notes given for the purchase price thereof. I further agree in consideration of the use of said property to pay any balance remaining unpaid on this or any other such note after the net proceeds of such sale are applied, and that if said property, or any part thereof, shall be lost, damaged or destroyed before full payment of the purchase price, I shall not on that account be entitled to a rescission of this contract or abatement in price."

Is there anything in this long statement included in the face of the notes that amounts to a promise on the part of the maker to do anything in addition to the payment of money to meet the obliga-

tions of the notes? He authorizes the payee or holder to deduct from the proceeds derived from the sale of the property held as security the expense for repossessing, storing, reconditioning, and reselling the property and to credit the net proceeds on the note, and then promises to pay the balance remaining unpaid. Is this not substantially the same as saying that in case the property is taken and sold to pay these notes, I further agree to pay all expense of reconditioning, storing, repossessing, and reselling the same? These may be proper and usual obligations in a chattel mortgage, but they are none the less promises to do some additional act.

In the case of *Bank v. Hoffman*, 85 Kan. 71, 116 Pac. 239, the note contained the promise that if the security attached as collateral depreciated in value the maker would furnish additional security, and the note was for that reason held to be nonnegotiable. Observe the words used in the last sentence above quoted from the body of the notes, which expressly show all parties thereto understood there was something additional promised by the maker—"I further agree in consideration of the use of said property to pay any balance remaining unpaid," etc.—a further promise supported by a consideration not involved in the purchase of the property for which the notes were given.

In *Killam v. Schoeps*, 26 Kan. 310, 313, it was said by Justice Brewer under similar circumstances:

"The additional stipulation is not in reference to the payment of money, but a matter entirely foreign and distinct. There might as well be included in one agreement a contract for the lease of real estate, or the hiring of chattels, or the performance of labor with an absolute promise to pay a sum certain at a certain time, and then affirm that by reason of this absolute promise the entire contract is a negotiable instrument."

Whatever may be said as to necessary costs and expenses incidental to the collection from the sale of the property, it certainly cannot be expanded to include "reconditioning" and a further promise as to and for the use of the property. (8 C. J. 125.)

A serious, and we think fatal, omission in the statement of the rights of the holder with reference to the property is the words of the statute (R. S. 52-205) "for reasonable cause," thus giving the holder of these notes the right to dispose of the property with or without reasonable cause for deeming himself insecure.

"The negotiable instruments law was adopted for the purpose of establishing uniformity in the law pertaining to negotiable instruments. (*First State*

*Bank of Nortonville v. Williams,* 164 Ky. 143.) The purpose of the law, among others, is to establish definite rules by which persons dealing in bills and notes may, by examining an instrument, know whether or not it is a negotiable instrument. Perhaps some of the rules respecting negotiable instruments are arbitrary (*Killam v. Schoeps,* 26 Kan. 310), but they should be followed, for, to hold otherwise would make the law of no force." (*Foley v. Hardy,* 122 Kan. 616, 618, 253 Pac. 238.)

Regardless of whether the notes were negotiable or not the appellant maintains that the appellee was not a holder in due course. Adopting the theory of the appellee for the time being with reference to the question of agency, viz., that the local dealers, Farrell Bros., were not agents of the plaintiff but purchasers under conditional sale contracts, let us assemble the undisputed evidence on the subject of the knowledge and contact of the plaintiff company with the entire transaction with the defendant here involved. The following four extracts are from the conditional sale contracts between the plaintiff company and Farrell Bros., the local dealers, referred to in the contracts as the purchasers:

"The title to all goods shipped under this contract, with right of repossession for default, is reserved by the company until the purchaser has made full payment in cash for all of said goods and for all notes given therefor. Prior to full settlement in cash the purchaser shall have no right to sell or dispose of any goods delivered hereunder except for value received in the ordinary course of trade and upon the express condition that prior to the delivery of any of said goods to a customer, the purchaser shall secure from said customer a full settlement in cash or good and bankable notes and that the proceeds of all resales shall be considered the property of the company in lieu of the goods so sold and held in trust for it and subject to its order, as provided in paragraph four hereof, until all sums due under this contract have been fully paid. . . .

"The company will furnish the purchaser with a supply of printed forms for use in reselling the goods ordered hereunder and containing written warranties applicable to the several kinds of goods. In all cases where the purchaser gives his customer a written warranty in the form suggested, the company will protect the purchaser and stand back of him in giving such warranty. . . .

"The company reserves the right to change the form of warranty in any of said order blanks at any time. The net price (but no freight or express charge) of any parts which the purchaser is liable to furnish and shall furnish a customer in fulfillment of any such warranty may be charged back to the company. . . .

"Upon request of the company at any time the purchaser agrees to turn over, indorse and assign to the company a quantity of customers' notes or, if notes are not available, then customers' accounts sufficient to fully cover

and secure all indebtedness of the purchaser hereunder, such notes and accounts to be held as collateral security to said indebtedness. Payment of said customers' notes and accounts at maturity is guaranteed by the purchaser and presentation, demand, protest, notice of protest and diligence are waived both as to makers and indorsers. In case of default in payment of any of said collateral notes or accounts, the purchaser agrees to remit cash for full amount of same together with interest and collection charges within 15 days after maturity. All collections on collateral notes or accounts are to be credited on the note or notes or account of the purchaser first becoming due. On payment of purchaser's indebtedness in full all collateral notes or accounts remaining in possession of the company are to be returned."

The following is a copy of one of the two orders made by the defendant, the other differing only as to description and price of machinery purchased and the number and size of the notes given therefor:

"ORDER FOR GOODS.

To Farrell Bros. (Dealer).

Niles (Town) Ks. (State).

I hereby order of you the following goods:

| No. ordered. | Size and description. | Price. |
|---|---|---|
| 1 | 10 ft powr drve Havestr Thresh | $1,085.00 |
| 1 | 30 Bu. Grain Bin | 82.50 |
| | Carrying Charge | 29.19 |

Subject to crop condition.

(If space is insufficient continue order on back.)

To be delivered at your place of business on or about June 10, '26.

I agree to pay freight on same from factory and settle on delivery in cash or approved bankable notes as follows:

Deposit note of $250.

$583.75 due July 15, 1926.

$613.94 due July 15, 1927.

Notes to draw interest at 8 per cent per annum before and 10 per cent per annum after maturity.

I am retaining a copy of this order which, together with the warranty and agreement on the back hereof, is understood to be our entire contract.

5-17, 1926 (Date)   W. H. Watkins (Purchaser's signature).

Niles (Post office)   1 (R. F. D.)   Ks. (State).

Ottawa (County)   Lincoln (Township).

Purchaser lives 1 miles north, east, south, west of above P. O.

Order taken by E. A. Taylor.

Subject to acceptance by dealer to whom order is addressed.

Accepted 5-17, 1926 (Date)   By FARRELL BROS.

(Give purchaser a copy of this order.)"

On the back of these orders is what is denominated a "warranty and agreement," a part of which is as follows:

"The purchaser agrees to give each machine a fair trial as soon as possible after receiving and within two days after the first use. If it then fails to work properly and prompt notice is given, the seller will send a man within a reasonable time to put it in order, the purchaser agreeing to render friendly assistance. If it still fails to work properly and the purchaser promptly returns it to the seller at the place where delivered, the seller will refund the amount paid, which shall constitute a settlement in full."

It will be observed that the order says it was taken by E. A. Taylor and accepted the same day by Farrell Bros. The undisputed evidence shows that Taylor and Jack Farrell were present when purchase was made by defendant and contract signed; that Taylor kept the original; that Farrell never reported the sale to the company, but received the commission; that the notes in question were signed in the presence of Jack Farrell and E. A. Taylor; that the chattel mortgage was prepared by R. N. Bersten and signed in his presence and that of one J. R. Tyler; that the notes and chattel mortgage were immediately transferred by Farrell Bros. to the plaintiff and were in their hands only while they were being so assigned, and Farrell Bros. were given credit for them on their account with the plaintiff; that E. A. Taylor was a traveling salesman for the plaintiff, R. N. Bersten was the credit clerk in the branch office of the plaintiff at Salina, Kan., and J. R. Tyler was what was called a block-man having a territory assigned to him by the plaintiff, the defendant and Farrell Bros. being in his territory.

From the above undisputed facts it will readily be observed that the plaintiff company was, through its recognized agents and representatives, Taylor, Bersten and Tyler, in close touch with every detail in connection with the sale to defendant and the taking of the notes and security therefor. Taylor took the order, as the order itself states. Farrell Bros. never reported the sale, and had possession of the original order or the notes or mortgage only long enough to assign them. The sales contract provides that the notes and securities taken from the customer by Farrell Bros. belong to the plaintiff company, so that plaintiff could have recovered them by replevin or other proceeding if Farrell Bros. had refused to assign and deliver them. The plaintiff company furnished the order blanks with the printed warranties on the back of them, required their use, and agreed to stand back of Farrell Bros. for any loss by reason of any breach of such warranty. The plaintiff's representative investigated the security and prepared the chattel mortgage. Farrell Bros.'

only apparent duty or work was to accept the order and assign the notes and mortgage. The plaintiff company handled everything from the start to the finish. This is most certainly not within the contemplation of the term "holder in due course," as defined in R. S. 52-502, particularly as to the third and fourth subdivisions thereof.

Appellee relies upon *Ireland v. Shore*, 91 Kan. 326, 137 Pac. 926; *Bank v. Hildebrand*, 103 Kan. 705, 177 Pac. 6; and *Thresher Co. v. West*, 108 Kan. 875, 196 Pac. 1061. The only portion of the first-named case in point is with reference to the burden of proof, which does not directly affect this case, as the defendant assumed the burden of proof and the defense is not defective title.

In the second case cited above it was held:

"The purchaser of a promissory note is not prevented from being a holder in due course by the knowledge of the fact that, as between the maker and the payee, there may, before the note matures, arise a set-off or counterclaim in favor of the maker." (*Bank v. Hildebrand*, supra, syl. ¶ 2.)

It was there stated that everyone knows that, as between the maker and the payee, there may, before the maturity of the note, arise a set-off in favor of the maker. There the indorsee was a bank and its first connection with the transaction was the purchase of the note. The defense was bad faith of the purchaser, whereby it could have known that the payee was insolvent and that the note was therefore given without consideration, it being a note for insurance premium. If the bank in that case had been standing back of the insolvent insurance company and had agreed to make good any loss sustained by the insurance company by reason of such policy the facts would have been similar to those in this case. So we cannot consider the Hildebrand case as helpful in this case.

The third case cited above is one based on some facts very similar to those in this case. It involved breach of warranty of machinery. The payee of the note later consolidated with the company which sued on the note. It was there held in effect that knowledge on the part of the plaintiff of the terms and conditions of the contract under which the machinery was sold would not prevent the plaintiff from being a holder in due course; that the indorsee should not be made to assume a liability on a warranty upon the mere showing that such indorsee knew of the existence of such contract of warranty. The opinion further states:

"The defendant offered no evidence to show that there had been a con-

solidation of the Rumely Products Company and the plaintiff. None was offered to show that the Advance-Rumely Thresher Company assumed the obligations of the original contract, nor was there evidence tending to show that the plaintiff was not a purchaser of the notes before maturity for a valuable consideration and without notice of defects or equities between the defendant and the original payee." (*Thresher Co. v. West,* supra, p. 877.)

These concluding remarks of the court show a radical difference between that case and the instant case. Can this well-designed plan of having the notes made payable to a third party and immediately assigned be said to be in good faith and in due course when its very evident purpose is to cut off all equities of the maker?

"If one who takes a bill of exchange or promissory note knows at the time that defenses and equities exist against it in the hands of his transferor, he is not entitled to the protection afforded a *bona fide* holder by the rule of the commercial law. This notice of a defense to the instrument or of its infirmity affects the good faith of the purchaser and deprives him of the vantage ground and security of an innocent purchaser. However much he may have taken the instrument for value and before maturity, knowledge nevertheless deprives him of the character of a holder in due course." (3 R. C. L. 1065.)

There is no question of notice in this case as in most cases. Plaintiff furnished the blank forms, authorized the warranty, and agreed to make it good to the local dealer. The representatives of the plaintiff took the order and two other representatives looked after the taking of security. The local dealers simply accepted the order and assigned the papers. The notes were the property of the plaintiff by the terms of the contract even before they were assigned. We cannot call this a transaction in good faith or one to entitle the plaintiff to the privileges of a holder in due course under the statute.

"It has been said that good faith means payment of value for the instrument; but the payment of a valuable consideration is not alone sufficient to establish good faith. Nor does the additional fact of acquisition before maturity establish a case of *bona fides*. It should appear, also, that the facts and circumstances attending the transfer were not such as to charge the transferee with notice of a defect or infirmity in the paper." (3 R. C. L. 1032.)

"Actual knowledge of defenses or of equities precludes a holder from occupying the position of a holder in due course, although he paid full value for the instrument." (8 C. J. 497.)

"If a party has knowledge of facts or circumstances involved in the negotiation of a note, the legal effect of which would avoid the transfer to him, he cannot claim as a *bona fide* holder, no matter how honestly he may have believed that the law would sustain the transfer." (8 C. J. 499.)

We conclude that the plaintiff is not a holder in due course of the notes involved in this case.

The judgment is reversed and the cause is remanded with instructions to render judgment in accordance with the views herein expressed.

BURCH, J., not sitting.