No. 27,823.

D. M. CECIL and ARTHUR J. NEILD, *Appellees,* v. G. R. BRIDGES
et al., *Appellants.*

(263 Pac. 1058.)

**SYLLABUS BY THE COURT.**

1. TRIAL—*Questions for Jury—Credibility of Witnesses.* The determination
of a controverted question of fact involving the credibility of witnesses and
the truth of their testimony is ordinarily one for the jury. (*Smith et al. v.
Gregg,* 117 Kan. 507, 232 Pac. 217.)

2. SAME — *Directing Verdict — Substantial Evidence Supporting Contention.*
Where an action is brought upon a promissory note and the maker alleges
and offers substantial evidence tending to show that it was executed without
consideration and for the accommodation of the holder (plaintiff), the
court is not warranted in directing a verdict for the plaintiff.

Appeal from Reno district court; WILLIAM G. FAIRCHILD, judge. Opinion
filed February 11, 1928. Reversed.

*C. M. Williams, D. C. Martindell* and *Aaron Coleman,* all of Hutchinson,
for the appellants.

*Charles G. Yankey, John L. Gleason* and *Kenneth K. Cox,* all of Wichita,
for the appellees.

The opinion of the court was delivered by

HOPKINS, J: The action was one to recover on a promissory
note. The defense was no consideration and that the note was
executed for the accommodation of the plaintiffs and another. The
court directed a verdict for plaintiffs and defendants appeal.

The facts are substantially these: Plaintiffs were real-estate
agents in Texahoma, Okla. J. F. Branstetter was a real-estate
agent, operating from Nickerson, Kan. Branstetter took Jesse
Langford to Oklahoma for the purpose of selling him some land,
which Langford agreed to buy. The land was owned by W. J.
Branstine, who had listed it with plaintiffs for sale. When it came
time to execute the papers Branstetter feared that W. C. Smith, who
was also in the real-estate business, might claim a commission, and
it was suggested in the presence of Cecil or Neild that the deed to
the property be executed to the defendant Bridges, a brother-in-
law of Langford. This was accordingly done. The papers were

Bills and Notes, 8 C. J. p. 1064 n. 80. Trial, 38 Cyc. p. 1518 n. 69. Witnesses,
46 L. R. A. n. s. 1030; 28 R. C. L. 657.

sent to Bridges' bank and executed by him and his wife for the accommodation of Langford and plaintiffs. Afterwards Bridges conveyed the land to Langford, Langford originally having paid $1,500 cash on the deal.

Langford testified substantially that he was a resident of Reno county, Kansas; that Branstetter got him to go down and look at this particular land, the first time in January, 1920; that Branstetter was connected with one Smith in the real-estate business at that time; that they stayed with Smith all night but did not buy; went back the second time in March and decided to buy through Branstetter and Cecil or Neild; that Branstetter suggested that they make out the papers in Mr. Bridges' name for a couple of weeks so Smith would not come on to them for his part of the commission; that Cecil was present, and all three participated in the conversation; that he was just an agent; that both sets of papers were prepared, one for Bridges, and then one from Bridges to him at the same time; that mortgages were made out and he was to take them over. They were made at the same time the deeds were made and made from Bridges to Branstine. The papers were sent to O. J. Windiate at Nickerson; Bridges was not down there, and had not talked to him about buying this land; that he came home and told Bridges about it. The deeds had not come yet; told him they wanted to do it that way in order to save a commission to Smith. Bridges was not interested in the land; that Langford paid $1,500 cash that day. The purchase price was $6,000; that Bridges made him a deed to this land two weeks or a month later; don't know how there came to be two notes. They said that was the way they wanted to fix it; that Langford didn't question it. Bridges or his wife had never been interested in this land. He had not seen the land prior to that time; that Branstetter was not his agent. Branstetter had in the meantime changed from the Smith agency to the Cecil-Neild agency. Never employed Branstetter as his agent in any way or paid him anything; did not pay Cecil and Neild anything; that Cecil, Branstetter and he were present when this deal was closed up. Branstine was not there. They fixed up the papers.

On cross-examination, he testified that he thought Cecil made out the deed, did the writing, the typewriting part of it—made both deeds; that the papers were all sent to the Nickerson State Bank to Mr. Windiate, the deeds and mortgages and all for Mr. Windiate to

have his brother-in-law and sister sign, and that he supposed they signed it; that it was the agreement that he (Langford) was buying the land and not Bridges; that Bridges did not have a thing in the world to do with it; that it was done to accommodate Cecil and Branstetter.

Branstetter and Bridges testified to substantially the same state of facts as Langford. For plaintiffs, Cecil denied the testimony of defendants, and there was also for consideration the deed to Bridges, notes and mortgages, Bridges to Branstine, and indorsement of the note in controversy by Branstine. Was the court warranted in directing judgment for plaintiffs? We think not. At best there remained a controverted question of fact as to whether Bridges actually purchased the property and in consideration therefor executed the note sued on, or merely executed the note for the accommodation of plaintiffs and Langford—a question of fact which under numerous authorities should have been ascertained by the jury. (See *Bank v. Houser,* 95 Kan. 351, 148 Pac. 740; *Means v. Bank,* 97 Kan. 748, 156 Pac. 701; *Smith v. Paper Co.,* 101 Kan. 274, 166 Pac. 484; *Lower v. Shorthill,* 103 Kan. 534, 176 Pac. 107; *Beachy v. Jones,* 108 Kan. 236, 195 Pac. 184; *National Bank v. Williams,* 117 Kan. 501, 232 Pac. 252; *Smith et al. v. Gregg,* 117 Kan. 507, 232 Pac. 217; *Bank v. Lovett,* 123 Kan. 405, 256 Pac. 147.)

The judgment is reversed with directions to grant a new trial.