No. 30,139.

D. M. CECIL and ARTHUR NEILD, *Appellees*, v. G. R. BRIDGES and IDONIA BRIDGES, *Appellants*.

(5 P. 2d 857.)

Opinion filed December 12, 1931.

*Aaron Coleman* and *C. M. Williams*, both of Hutchinson, for the appellants.

*Charles G. Yankey, John L. Gleason* and *Kenneth K. Cox*, all of Wichita, for the appellees.

The opinion of the court was delivered by

HARVEY, J.: This is an action on a promissory note. Defendants admitted its execution, but alleged that it was given without consideration to them and for the accommodation of the plaintiffs. The jury answered special questions and returned a general verdict for plaintiffs, on which judgment was entered. Defendants appeal and complain of the refusal to give an instruction requested, of instructions given, and that the answers to special questions are not in accord with the evidence.

The facts may be briefly stated as follows: Plaintiffs were real-estate brokers at Texhoma, Okla. William J. Branstine owned 240 acres of land near Texhoma. In January, 1920, he listed this land with plaintiffs for sale, giving them an exclusive agency to April 1, 1920, for the sum of $5,000 net to him, of which $1,500 was to be paid in cash and the balance secured by mortgages on the land. He agreed and bound himself to protect plaintiffs on all sums over

$5,000 that plaintiffs might sell the land for, as their commission. At that time Tom Branstetter was a real-estate agent at Nickerson, Kan. Among other things he made a business of taking prospective purchasers of land to Texhoma and operated through some one of the real-estate agents there in the sale of Oklahoma or Texas land. Prior to this transaction he had been operating with W. C. Smith, of Texhoma. On one of his trips he took Jesse Langford, who lived in Reno county, to Texhoma as a prospective buyer of land, and went with him to W. C. Smith, who showed them various tracts of land near Texhoma. On the trip they drove by the Branstine farm. Langford was interested in it, but Smith did not have it listed for sale. Later Branstetter took Langford to plaintiffs, who priced the Branstine farm at $6,000. Langford concluded to buy it. Branstetter did not want him to buy this farm through plaintiffs for fear Smith might interfere in some way with his being compensated for taking Langford there. So he and Langford came back to Reno county and saw the defendant Bridges, who is a brother-in-law of Langford, and asked him to buy the farm for Langford, or to have the transaction handled in his name. Bridges consented to that. Plaintiffs were notified that Bridges would buy the land, and that papers should be made out to him. Plaintiffs had Branstine execute the deed to Bridges and it was sent to the bank at Nickerson. By it the grantee assumed an $1,800 mortgage on the land, paid $1,500 in cash, which money was in fact paid by Langford, and Bridges and his wife executed two notes, payable to Branstine, one of the notes being for $1,350, due in one year from date, and the other being for $1,170, due in two years from date. These notes were secured by a second mortgage on the land purchased. The deed from Branstine to Bridges was delivered to him, and the notes just mentioned, and the mortgage securing them, and the $1,500 in cash, were delivered to Branstine. Thereafter Branstine, in settling with plaintiffs for their commission for the sale of the land, transferred to them the $1,170 note, indorsing the same without recourse, and received from them the difference between the face of the note and $1,000. A few weeks after the title of the property had been conveyed to Bridges he and his wife executed a deed for the property to Langford, which deed recited that he assumed and agreed to pay the mortgages thereon. The note for $1,170 was not paid when due, and plaintiffs sued Bridges and his wife on the note. At

the first trial the court directed a verdict for plaintiffs. Defendants appealed. This court reversed the judgment of the court below (*Cecil v. Bridges*, 125 Kan. 189, 263 Pac. 1058) for the reason that there was oral testimony tending to show that plaintiffs, being fearful that Smith might interfere with them in collecting their commission, had, for their accommodation, induced defendants to execute this note, and the court thought that matter should be submitted to a jury. On a trial thereafter, from which this appeal is taken, that question went to the jury, and the special findings and general verdict were adverse to the defendants on that issue.

It may be well to observe that the note sued on was not an accommodation note and defendants were not accommodation parties thereon, within the meaning of our statute (R. S. 52-306) which reads:

"An accommodation party is one who has signed the instrument as maker, drawer, acceptor or indorser without receiving value therefor, and for the purpose of lending his name to some other person. Such a person is liable on the instrument to a holder for value, notwithstanding such holder at the time of taking the instrument knew him to be only an accommodation party."

As between defendants, the makers of the note, and Branstine, the payee, the note was not without consideration. Defendants knew the note was given to Branstine in part payment for the land, for which they received the deed of conveyance. Had Branstine sued on this note these defendants could not have been heard to say there was no consideration for the note. Even if the note had been given to Branstine without consideration and for his accommodation, which clearly it was not, a holder of the note for value could sue and recover thereon even though he knew the note had been given without consideration and as an accommodation to the payee. The statute so provides. Hence the theory of the defendants here does not constitute a defense under our statute relating to an accommodation party. Perhaps that is the reason the court directed a verdict for plaintiffs at the first trial. It was possible that the evidence might disclose that the note sued upon was really given to plaintiffs, who had taken it in the name of Branstine and had it indorsed to them, as a plan to prevent the statute from applying. The defense is that of an accommodation party in equity (if such there can be) rather than strictly in harmony with the statute, hence this court deemed a full trial of the matter appropriate. Now that there has been a full trial and the jury has found that the note was not

made for the accommodation of plaintiffs, there is not much left to this lawsuit.

Turning now to the questions argued by appellants, they contend the court erred in refusing to give an instruction requested. Examining the instructions as given, we find the instruction requested was given in substance. There is therefore no room for complaint in this particular. Appellants complain of a sentence used by the court in the instructions given. It is conceded the sentence complained of is correct as an abstract statement of law, but it is argued it is not applicable under the facts of the case, and for that reason should not have been given. Generally speaking, the instructions given should be applicable in the case, and instructions, even though they contain correct statements of the law which are inapplicable under the facts of the case, should not be given. On this ground there is some room to criticize the sentence referred to, but in view of the instructions given, which clearly embodied the law governing the case as it applied both to the theory of the plaintiffs and to that of the defendants, the giving of the sentence complained of is not deemed material.

Appellants complain of the answers made by the jury to the special questions. Twenty special questions were submitted. It is not necessary to set them out at length. Appellants' chief complaint is that some of the questions should have been answered the other way, under the evidence. It is not seriously argued there was no competent substantial evidence to sustain the answers returned by the jury, but the argument is that the weight of the evidence was to the contrary. But the jury and trial court passed upon the weight of the evidence, and even though appellants' contentions in this respect were correct, which we do not decide, there is nothing we could do about it.

There is no material error in the record, and the judgment of the court below is affirmed.